IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 6, 2009 Session

## RICKY HARRIS v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Carter County**
**No. S16982     R. Jerry Beck, Judge**

No. E2005-00566-SC-R11-PC - Filed January 14, 2010

We granted the State's appeal to determine whether the Court of Criminal Appeals erred in reversing the trial court's summary dismissal of the petition for writ of error coram nobis and remanding for a determination of whether due process requires tolling of the one-year statute of limitations. We conclude that the delay in seeking coram nobis relief is unreasonable as a matter of law under the circumstances of this case, and therefore due process considerations do not preclude application of the statute of limitations to bar the petition. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court dismissing the petition.

**Tenn. R. App. P. 11 Appeal by Permission;**
**Judgment of the Court of Criminal Appeals Reversed;**
**Judgment of the Trial Court Reinstated**

JANICE M. HOLDER, C.J., delivered the opinion of the Court, in which GARY R. WADE and SHARON G. LEE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a separate opinion concurring in part and concurring in result, in which CORNELIA A. CLARK, J., joined

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Mark A. Fulks, Senior Counsel; Joe Crumley, District Attorney General; and Kenneth C. Baldwin, Assistant Attorney General, for the appellant, State of Tennessee.

Sonya Slaughter Helm, Bristol, Tennessee, for the appellee, Ricky Harris.

# OPINION

## Facts and Procedural History

On March 1, 1988, a jury found the petitioner, Ricky Harris, guilty of first degree murder. On May 4, 1988, the trial court denied Mr. Harris's motion for a new trial and entered a judgment sentencing him to life imprisonment. His conviction and sentence were affirmed on direct appeal. State v. Harris, No. 85, 1990 WL 171507 (Tenn. Crim. App. Nov. 8, 1990), perm. app. denied, (Tenn. Feb. 4, 1991). In 1992, Mr. Harris sought post-conviction relief, alleging that his counsel were ineffective and that the State withheld exculpatory evidence. The trial court's denial of post-conviction relief was affirmed on appeal. Harris v. State, No. 03C01-9611-CR-00410, 1998 WL 191441 (Tenn. Crim. App. Apr. 23, 1998), perm. app. denied, (Tenn. Dec. 7, 1998).

On December 10, 1998, just three days after this Court denied Mr. Harris's application for permission to appeal, Mr. Harris filed a motion to reopen his post-conviction petition, alleging that the State had failed to disclose the identity of a purported alibi witness named Corrine Hampton. Mr. Harris asserted that he became aware of Ms. Hampton when he received an anonymous letter in response to an August 1998 newspaper advertisement seeking information about his case. The letter stated that Ms. Hampton told an unidentified officer that a man resembling Mr. Harris helped her when she had car trouble on September 8, 1987, at approximately 8:25 a.m. She saw nothing suspicious inside his car or trunk and followed him to the car dealership where he worked. These events allegedly occurred during the time when Mr. Harris was murdering the victim and disposing of her body according to the State's theory of the crime. The trial court denied the motion to reopen, ruling that the motion did not state a cognizable ground for reopening the post-conviction petition.[1]

On appeal, a majority of the Court of Criminal Appeals sua sponte treated the motion to reopen as a petition for writ of error coram nobis and remanded the case for a hearing on the merits. After granting the State's application for permission to appeal, this Court held that Mr. Harris did not state a cognizable ground for reopening his post-conviction petition. Harris v. State, 102 S.W.3d 587, 591 (Tenn. 2003). A majority of the Court held that the Court of Criminal Appeals erred in sua sponte treating the motion to reopen as a petition for writ of error coram nobis, although members of the majority disagreed on the reasoning used to reach this conclusion. Id. at 594. Two members of the Court dissented, stating that Mr. Harris's motion asserted a prima facie case for coram nobis relief and raised grounds

---

[1] Following the trial court's denial of his motion to reopen, Mr. Harris filed Ms. Hampton's affidavit containing the alleged exculpatory statement. The affidavit states that Ms. Hampton had car trouble in September 1987 but does not indicate the exact date of the incident.

requiring that the one-year coram nobis statute of limitations be tolled under due process principles. Id. at 596 (Anderson, J., concurring in part and dissenting in part).

On March 11, 2004, almost eleven months after this Court's opinion, Mr. Harris filed a petition for writ of error coram nobis. He based the petition on two items of purportedly newly discovered evidence. The first item related to the potential alibi witness, Ms. Hampton. Mr. Harris asserted that he did not become aware of the exculpatory nature of the evidence from Ms. Hampton until his private investigator contacted her in 1998. The second item related to someone named "Bill" who in June 1991, approximately three years after the trial, had sent the District Attorney General letters confessing to the murder and absolving Mr. Harris. Although the "Bill" letters had been given to Mr. Harris's trial counsel in June 1991, Mr. Harris contended that he did not obtain evidence proving the exculpatory nature of the letters until he received a handwriting expert's June 2002 report identifying their author.

The trial court summarily dismissed the petition for writ of error coram nobis. The trial court concluded that Mr. Harris was not entitled to coram nobis relief because his claims did not involve newly discovered evidence because he knew of Ms. Hampton at the time of his trial and the "Bill" letters were an issue as early as the original post-conviction proceeding. The trial court also ruled that the petition was barred by the statute of limitations.

The Court of Criminal Appeals reversed the trial court's dismissal of the petition. The intermediate appellate court remanded the case for a hearing to determine: (1) whether due process considerations require tolling of the statute of limitations; (2) whether the alibi evidence is credible; and (3) whether the third-party confession evidence is newly discovered.

We granted the State's application for permission to appeal.

**Analysis**

A proceeding in the nature of a writ of error coram nobis is available to convicted defendants in criminal cases. Tenn. Code Ann. § 40-26-105(a) (2006). Whether to grant or deny a petition for writ of error coram nobis on its merits rests within the sound discretion of the trial court. State v. Vasques, 221 S.W.3d 514, 527-28 (Tenn. 2007). Coram nobis claims may be based on newly discovered evidence:

> Upon a showing by the defendant that the defendant was without fault in
> failing to present certain evidence at the proper time, a writ of error coram

nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b).

Coram nobis claims are subject to a one-year statute of limitations. Tenn. Code Ann. § 27-7-103 (2000) ("The writ of error coram nobis may be had within one (1) year after the judgment becomes final . . . ."). The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion. Mixon v. State, 983 S.W.2d 661, 670 (Tenn. 1999). Whether a claim is barred by an applicable statute of limitations is a question of law, which we review de novo. Brown v. Erachem Comilog, Inc., 231 S.W.3d 918, 921 (Tenn. 2007). We construe the coram nobis statute of limitations consistent with the longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim. Mixon, 983 S.W.2d at 670. The State bears the burden of raising the bar of the statute of limitations as an affirmative defense. Harris, 102 S.W.3d at 593.

In this case, the State appropriately raised the statute of limitations in the trial court. Id.; see Sands v. State, 903 S.W.2d 297, 299 (Tenn. 1995). The trial court ruled that the petition was time-barred. The State has not relied on the statute of limitations in this Court, arguing instead that the trial court properly denied coram nobis relief on the merits. This Court is not compelled, however, to accept a concession by the State in this regard. Barron v. State Dept. of Human Serv., 184 S.W.3d 219, 223 (Tenn. 2006). The threshold question for determination, therefore, is whether Mr. Harris's petition is barred by the statute of limitations.

When a petitioner seeks a writ of error coram nobis based on newly discovered evidence of actual innocence, due process considerations may require tolling of the statute of limitations. Workman v. State, 41 S.W.3d 100, 101 (Tenn. 2001). These due process considerations refer to the principle that "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992). Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. See Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006).

-4-

To determine whether due process requires tolling, a court must weigh the petitioner's interest in obtaining a hearing to present a later-arising ground for relief against the State's interest in preventing stale and groundless claims. Workman, 41 S.W.3d at 103. In balancing these interests, a court should utilize a three-step analysis:

(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995).

In this case, the limitations period normally would have begun to run on June 3, 1988, thirty days after the trial court denied Mr. Harris's motion for a new trial. Therefore, the statute of limitations would have expired on June 4, 1989, almost fifteen years before Mr. Harris filed his petition for writ of error coram nobis.

The second step in the analysis requires a determination of whether Mr. Harris's grounds for relief—the alibi evidence and the third-party confession evidence—actually arose after the limitations period normally would have commenced. The factual allegations relevant to whether these grounds are later-arising are subject to considerable dispute. See Harris, 102 S.W.3d at 596 (observing that the factual allegations relevant to the tolling issue were subject to considerable dispute) (Holder, J., concurring).[2] If tolling depended only on whether the grounds were later-arising, we would agree with the Court of Criminal Appeals that an evidentiary hearing would be necessary to resolve the issue.

The Court of Criminal Appeals did not address the third step in the analysis, however, which requires a determination of whether Mr. Harris was given a reasonable opportunity to present his claims. On two prior occasions, we have examined the reasonableness of delayed filings based on later-arising exculpatory evidence claims. In Workman, a capital case, the

_____

[2] Discussion of tolling in Harris was limited to the purported alibi evidence obtained in response to Mr. Harris's August 1998 newspaper advertisement. A plurality of the Court, in dicta, and two dissenting members of the Court disagreed as to whether the claim was later-arising. Compare Harris, 102 S.W.3d at 594 n.10 (plurality opinion) ("[T]he proof upon which Harris relies does not appear to state a prima facie later-arising claim under the writ of error coram nobis statute.") with id. at 602 (Anderson, J., concurring in part and dissenting in part) ("I do not agree that the petitioner has failed to assert a later-arising issue or that the petitioner's liberty interests are diminished as concluded by the majority."). As the motion to reopen was filed shortly after the evidence was obtained, subsequent delay in filing was not an issue.

petition for writ of error coram nobis was filed approximately thirteen months after the petitioner obtained the evidence at issue. We concluded that the time within which the petition was filed did not exceed the reasonable opportunity afforded by due process. Workman, 41 S.W.3d at 103. We subsequently applied this analysis in the context of a post-conviction capital case. See Sample v. State, 82 S.W.3d 267 (Tenn. 2002). In Sample, the petitioner did not raise his claim that the State withheld exculpatory evidence until sixteen months after he obtained the evidence. The Court noted that the applicable post-conviction statute of limitations was three years and that there was no specific statutory period for raising later-arising claims. Id. at 276 n.13. We found no basis for holding that the sixteen-month delay "in and of itself was unreasonable." Id. at 276.

In applying the due process balancing analysis, we have declined to create a specific limitations period for later-arising claims. Id. at 273 n.8. Moreover, we have not previously attempted to set an outer limit of reasonableness for delayed filings based on such claims. This case presents an opportunity to clarify when delay in seeking coram nobis relief may be unreasonable as a matter of law, keeping in mind that each case must stand on its own facts.[3]

Mr. Harris alleged in his petition for writ of error coram nobis that he did not become aware of the exculpatory nature of the alibi evidence until his private investigator contacted Ms. Hampton in 1998. Mr. Harris further alleged that he did not obtain evidence proving the exculpatory nature of the third-party confession until he received a handwriting expert's June 2002 report identifying the author of the "Bill" letters. Even if we accept as true all of Mr. Harris's allegations regarding these two items of evidence, Mr. Harris could have asserted a coram nobis claim as early as 1998 with regard to the alibi evidence and as early as June 2002 with regard to the third-party confession evidence. Mr. Harris filed his petition for writ of error coram nobis on March 11, 2004. This represents a delay of approximately six years with regard to the alibi evidence and approximately twenty-one months with regard to the third-party confession evidence.

Moreover, we need not consider Mr. Harris's previous attempt to present the alibi evidence in a motion to reopen his post-conviction petition in determining whether he has been denied a reasonable opportunity to assert a claim. No statute in Tennessee nor tolling rule developed at common law provides that the time for filing a cause of action is tolled during the period in which a litigant pursues a related but independent cause of action. In 1998, when Mr. Harris filed his motion to reopen his post-conviction petition based on newly discovered evidence, he chose not to file a petition for writ of error coram nobis. On appeal

---

[3] If there is a reasonable doubt as to the applicability of the procedural bar and the surrounding circumstances are not adequately developed, prudence may warrant an evidentiary hearing. In the words of Benjamin Franklin, "an ounce of prevention is worth a pound of cure."

to the Court of Criminal Appeals from the trial court's denial of his motion to reopen, Mr. Harris stated that he "never intended to file a writ of error coram nobis in this case." Harris, 102 S.W.3d at 595 (Holder, J., concurring). Despite his claim alleging newly discovered evidence, he further stated that "the writ of error coram nobis doesn't apply to the case at bar . . . ." Id.

Unlike other cases in which the statute of limitations has been tolled because of due process concerns, the opportunity to assert a coram nobis claim was entirely within Mr. Harris's control after 1998 with regard to the alibi evidence and after June 2002 with regard to the third-party confession evidence. Nothing prevented Mr. Harris from filing a separate coram nobis action while his motion to reopen was pending. Cf. Burrell v. State, No. E1999-02762-CCA-R3-PC, 2001 WL 15792, at *2 (Tenn. Crim. App. Jan. 8, 2001), perm. app. denied, (Tenn. May 21, 2001) (holding that due process does not require tolling the post-conviction statute of limitations while a petition for certiorari in the direct appeal is pending before the United States Supreme Court because the defendant can seek post-conviction relief while the petition for certiorari is pending).

The State's appeal to this Court on February 4, 2002, in the proceeding in which Mr. Harris sought to reopen his post-conviction petition put Mr. Harris on notice that he should file a coram nobis claim to preserve this legal remedy. He chose to wait until March 11, 2004, twenty-five months after the State's appeal and eleven months after this Court's opinion, to assert such a claim. A majority of this Court determined that the Court of Criminal Appeals erred in sua sponte treating his motion to reopen as a petition for writ of error coram nobis. The intermediate appellate court's erroneous treatment of his motion to reopen can provide no basis for tolling the statute of limitations in his subsequent coram nobis action.

We conclude that the pleadings, read in the light most favorable to Mr. Harris, do not present a legal basis for overcoming the State's assertion of the statute of limitations. The time within which Mr. Harris filed his petition for writ of error coram nobis exceeds the reasonable opportunity afforded by due process. Mr. Harris's delay in seeking coram nobis relief—six years with respect to the alibi evidence and twenty-one months with respect to the third-party confession—is unreasonable under the circumstances of this case. As a matter of law and under the circumstances of this case, Mr. Harris is not entitled to due process tolling.[4] Therefore, his petition for writ of error coram nobis is barred by the statute of

_____

[4] The Court may take judicial notice of its own records. State v. Lawson, 291 S.W.3d 864, 869-70 (Tenn. 2009). In this instance, there is a direct appeal of the conviction, a post-conviction petition and appeal, and the motion to reopen in the appeal and the opinion in Harris v. State, 102 S.W.3d 586 (Tenn.
(continued...)

limitations. Having concluded that his petition is time-barred, we need not address the merits of his claims.

## Conclusion

We hold that the delay in seeking coram nobis relief is unreasonable as a matter of law under the circumstances of this case. Therefore, due process considerations do not preclude application of the statute of limitations to bar Mr. Harris's petition for writ of error coram nobis. Accordingly, we reverse the judgment of the Court of Criminal Appeals and reinstate the judgment of the trial court dismissing the petition. It appearing that Mr. Harris is indigent, costs of this appeal are assessed against the State of Tennessee, for which execution may issue if necessary.

_____
JANICE M. HOLDER, CHIEF JUSTICE

---

[4] (...continued)
2003).