IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
November 18, 2014 Session

**MISTY JANE BRUNELLE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Greene County**
**No. 11CR323     John F. Dugger, Jr., Judge**

_____

**No. E2014-00292-CCA-R3-ECN - Filed December 26, 2014**

_____

Petitioner, Misty Jane Brunelle, was convicted of three counts of aggravated child abuse in relation to broken bones sustained by her infant daughter. Her convictions and sentences were affirmed on appeal. *State v. Misty Brunelle*, E2006-00467-CCA-R3-CD, 2007 WL 2026616 (Tenn. Crim. App. July 13, 2007), *perm. app. denied* (Tenn. Oct. 22, 2007) ("*Brunelle I*"). Petitioner then filed a post-conviction petition, which was denied. This Court affirmed the denial of the post-conviction petition on the basis of ineffective assistance of counsel, but reversed the lower court's determination that no newly discovered evidence existed. *Misty Jane Brunelle v. State*, No. E2010-00662-CCA-R3-PC, 2011 WL 2436545 (Tenn. Crim. App. June 16, 2011), *perm. app. denied* (Tenn. Oct. 18, 2011) ("*Brunelle II*"). Petitioner then filed a petition for writ of error coram nobis, claiming that newly discovered evidence existed which may have resulted in a different outcome had it been presented at trial. After a hearing, the coram nobis court denied the petition. Based upon a thorough review of the law, record, and arguments in this case, we hold that the coram nobis court did not abuse its discretion in denying the petition. Therefore, we affirm the decision of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Brent Hensley, Greeneville, Tennessee, for the appellant, Misty Jane Brunelle.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; Dan Armstrong, District Attorney General; and Cecil C. Mills, Jr., Assistant District Attorney

General, for the appellant, State of Tennessee.

**OPINION**

*Factual and Procedural Background*

On February 2, 2006, Petitioner was convicted by a Greene County jury of three counts of aggravated child abuse in relation to broken bones sustained by her infant daughter ("the victim") in 2003. Petitioner received a total effective sentence of twenty-five years' incarceration. On direct appeal, this Court affirmed the convictions and sentences. *Brunelle I*, 2007 WL 2026616, at *18. The Tennessee Supreme Court denied Petitioner's application for permission to appeal.

On October 17, 2008, Petitioner filed a pro se petition for post-conviction relief. The post-conviction court appointed counsel, but no amended petition was filed. Petitioner claimed that she received ineffective assistance of counsel and that newly discovered evidence existed in her case, specifically a letter from the University of Washington that a genetic test could not definitively exclude a diagnosis of osteogenesis imperfecta, otherwise known as "brittle bone disease." After a hearing, the post-conviction court denied relief, finding that counsel had not been ineffective and that no newly discovered evidence existed. This Court affirmed the post-conviction court's ruling in part and reversed it in part. *Brunelle II*, 2011 WL 2436545, at *1. This Court reversed the trial court's ruling that the letter did not constitute newly discovered evidence, but held that such a claim should have been raised in a petition for writ of error coram nobis. *Id*. at *10.

On August 15, 2011, Petitioner filed a petition for writ of error coram nobis, claiming that newly discovered evidence existed which may have resulted in a different judgment had it been presented at trial. The newly discovered evidence is a letter from the University of Washington's School of Medicine which states that several tests were performed on a skin biopsy of the victim in 2003 to determine whether she had osteogenesis imperfecta (OI). According to the letter:

> Typically in individuals with OI type I[,] the amount of type I procallagen is reduced by half. The cells from your patient synthesized less than normal but greater than half of the usual amount of type I procollagen. We are uncertain if this finding is significant in terms of disease causation or is simply biological variation among samples.

The letter also stated that the tests were "unable to exclude the diagnosis of OI type I."

-2-

Petitioner asserted that she was unable to obtain this letter during her criminal trial because it was part of the victim's file with the Department of Children's Services (DCS), which was sealed during the victim's adoption proceedings.

The coram nobis court held a hearing on the petition on September 20, 2013. The only witness to testify at the hearing was Dr. Andrew Townsend, the victim's primary care physician for almost ten years. He testified that the victim is currently "a normal, active 10-year-old child with regular activities, no restrictions." The victim has not had any broken bones in the past ten years. Based on his observations and treatment of the victim, Dr. Townsend opined that she is not affected by osteogensis imperfecta. He described the usual symptoms of that disease and testified that the victim does not display any of these symptoms. In addition to recurrent fractures, one such symptom is short stature. Dr. Townsend testified that the victim is above the 50th percentile in both height and weight. Dr. Townsend admitted on cross-examination that he has never treated a child who suffered from osteogenesis imperfecta.

The coram nobis court took the matter under advisement in order to review the victim's medical records as a late filed exhibit. The coram nobis court entered an order denying the writ of error coram nobis on January 23, 2014. The coram nobis court made the following findings of fact and conclusions of law:

> The [c]ourt finds that [Petitioner's] proposed newly discovered evidence would not have resulted in a different judgment had it been presented at trial. The University of Washington Lab Report is not exculpatory evidence for [Petitioner] because it does not reflect a diagnosis of Osteogenesis Imperfecta (OI). The Laboratory Report merely states: "we were unable to exclude the diagnosis of OI type 1." Further, Dr. Andrew Townsend has been [the victim's] doctor for nearly ten (10) years and he does not believe she has Osteogenesis Imperfecta (OI).

Petitioner appealed the ruling of the coram nobis court, arguing that the court erred in concluding that the newly discovered evidence would not have resulted in a different judgment had it been presented at trial.

*Analysis*

The statute governing coram nobis relief provides, in pertinent part:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram

-3-

nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b). The writ of error coram nobis is "an *extraordinary* procedural remedy," designed to fill "only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (emphasis in original). The "purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1966)).

The decision whether to grant or deny a petition for writ of error coram nobis on its merits rests within the sound discretion of the trial court. *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). This Court will not disturb the coram nobis court's ruling absent an abuse of discretion. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." *State v. Wilson*, 367 S.W.3d 229, 235 (Tenn. 2012).

A petition for coram nobis relief usually must be filed within one year after the judgment becomes final. T.C.A. § 27-7-103. For the purposes of coram nobis relief, a judgment becomes final thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. Whether a claim is barred by an applicable statute of limitations is a question of law, which we review de novo. *Harris*, 301 S.W.3d at 144 (citing *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007)). The State bears the burden of raising the statute of limitations as an affirmative defense. *Id.*; *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995). Because the State did not raise the statute of limitations in the coram nobis court, we deem the issue waived.

Additionally, when a petitioner seeks a writ of error coram nobis based on newly discovered evidence, due process considerations may require tolling the statute of limitations. *Harris*, 301 S.W.3d at 145 (citing *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001)). Our supreme court has held that, "before a state may terminate a claim for failure to comply with procedural requirements such as a statute of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Workman*, 41 S.W.3d at 102 (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). This Court previously recognized this issue in Petitioner's

post-conviction appeal and noted that "due process requires balancing the 'governmental and private interests involved' and that the statute of limitations must be tolled if the private interest outweighs the government's interest in preventing stale and groundless claims." *Brunelle II*, 2011 WL 2436545, at *10 n.3 (citing *Burford*, 845 S.W.2d at 209). We find that Petitioner's interest in this case does outweigh any governmental interest, and we will address Petitioner's claim on its merits.

A petition for writ of error coram nobis must include: (1) the grounds and the nature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) that the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 2004); *Hart*, 911 S.W.2d at 374-75. The evidence must be relevant, admissible, and credible. *See Wilson*, 367 S.W.3d at 235; *Vasques*, 221 S.W.3d at 527. The coram nobis court must be "reasonably well satisfied" with the veracity of the evidence and determine whether the petitioner was truly "without fault," that is whether "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *Vasques*, 221 S.W.3d at 527. The court "must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence *may have* led to a different result." *Id.* (emphasis in original). In other words, there must be a "reasonable basis for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." *Id.* (citing *State v. Roberto Vasques et al*, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. Oct. 7, 2005)).

In this case, it is clear that Petitioner was without fault in failing to present the University of Washington letter during her 2006 trial. The letter was part of the victim's DCS file, which was sealed by the judge presiding over her adoption. *Brunelle II*, 2001 WL 2436545, at *3. In our post-conviction review, this Court held that Petitioner's trial counsel was not ineffective for failing to obtain the letter and noted that Petitioner "failed to suggest what more counsel could have done at trial . . . to have gained access to the DCS file." *Id.* at *8. We further noted that Petitioner did not have the letter when she filed her post-conviction petition or at the evidentiary hearing. *Id.* at *10. We conclude that Petitioner has exercised reasonable diligence in this case, which did not lead to a timely discovery of the evidence in question; therefore, Petitioner is without fault in failing to present the evidence at the proper time.

Secondly, the letter clearly relates to an issue litigated at trial, specifically whether the victim's injuries could potentially be attributed to osteogenesis imperfecta. *See Brunelle I*, 2007 WL 2026616, at *5-6. Dr. Robert Thomas, a radiologist who had examined x-rays of

the victim's injuries, testified for the State at trial that "the victim showed no signs of osteogenesis imperfecta," and that "because the victim did not have the bone disease, normal play would not cause these types of fractures." *Id.* at \*5. Dr. Thomas admitted on cross-examination that "it is not possible to be absolutely certain, based on x-rays, that one does not have brittle bone disease." *Id.* at \*6. During the subsequent post-conviction hearing, Petitioner's trial attorney testified that he investigated whether osteogenesis imperfecta could form part of the defense strategy. *Brunelle II*, 2011 WL 2436545, at \*3. Through discovery, he was provided results from a genetic test conducted by Tulane University that indicated that the victim's father was a carrier of the gene that causes osteogenesis imperfecta. *Id*. Trial counsel cross-examined the victim's father about a statement he made that someone in his family had the disease, but the victim's father stated that he later learned that was not true. *Id*. at \*7. Trial counsel also consulted with a forensic pathologist, who reviewed the discovery materials and came to the opinion that the victim did not have osteogenesis imperfecta. *Id.* at \*3.

Finally, there is no dispute as to the veracity of the evidence. This is not a case of recanted witness testimony, such as in *Mixon*, that would require a finding that "the testimony given by the material witness was false and the new testimony is true." 983 S.W.2d at 673 n.17. The evidence in this case is a letter reporting the results of tests conducted by the University of Washington. There is no dispute between the parties as to the authenticity or accuracy of the test results contained in the letter.

The determinative issue in this case is whether, considering this newly discovered evidence in conjunction with both the evidence presented at trial and the evidence presented at the coram nobis proceeding, the result of Petitioner's trial may have been different. Petitioner asserts that the coram nobis court applied an incorrect legal standard when it stated that the University of Washington letter was "not exculpatory evidence for [Petitioner] because it does not reflect a diagnosis of Osteogenesis Imperfecta" and that it "would not have resulted in a different judgment had it been presented at trial." We recognize that the choice of the words "would have" might reflect a higher standard than the "may have" standard applied by our supreme court to coram nobis proceedings. *See Vasques*, 221 S.W.3d at 526 (quoting *State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002)). However, the coram nobis court also found that Petitioner "has not shown even a mere possibility that her proposed newly discovered evidence may have resulted in a different judgment," which is a lower standard than that articulated in *Vasques*. *Id*. at 527 ("If based upon mere 'possibility,' coram nobis relief would be available to any defendant who, within one year of his conviction and sentence, discovers new evidence even if only slightly favorable to his defense."). Therefore, we cannot agree that the coram nobis court applied an incorrect legal standard.

Based upon our review of the record, we do not believe that the evidence at issue may have resulted in a different outcome had it been presented at trial. While the letter states that a diagnosis of osteogenesis imperfecta could not be excluded and that the victim's type I procollagen levels were less than normal, the levels were not consistent with someone who has the disease. Additionally, while the genetic test performed by Tulane University indicated that the victim and her father shared a genetic abnormality, because her father had no symptoms of osteogenesis imperfecta, "it is less likely this alteration is disease causing." As this Court stated in relation to Petitioner's claim of ineffective assistance of counsel:

> [G]iven the evidence at trial, particularly Dr. Thomas' testimony; the fact that neither the Tulane nor the Washington test results proved the victim had OI; and the fact that the petitioner's own potential expert would have testified that the victim did not suffer from OI and was "shredded," we again conclude the petitioner has failed to demonstrate any prejudice.

*Brunelle II*, 2011 WL 2436545, at *8. The coram nobis court also had before it the testimony of Dr. Townsend, the victim's primary care physician, that the victim does not display any of the symptoms of osteogenesis imperfecta and has not had a broken bone since being removed from the Petitioner's care. Further, even if the letter confirmed that the victim has osteogenesis imperfecta, it does not contradict the evidence presented at trial, deemed sufficient by this Court, that Petitioner caused the victim's injuries and did not seek treatment for those injuries for almost two weeks. *See Brunelle I*, 2007 WL 2026616, at *10. We hold that the coram nobis court did not abuse its discretion when it denied Petitioner relief.

*Conclusion*

Upon a thorough review if the record and arguments in this case, we find no error in the ruling of the coram nobis court. We, therefore, affirm the court's decision denying relief.

_____
TIMOTHY L. EASTER, JUDGE