# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### February 10, 2015 Session

## HARVEY TAYLOR v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2008-B-1760     Monte Watkins, Judge**

_____

**No. M2014-00541-CCA-R3-ECN – Filed March 16, 2015**

_____

Petitioner, Harvey Taylor, pled guilty to rape on August 20, 2009. On October 11, 2012, Petitioner filed a petition for writ of error coram nobis, citing newly discovered evidence. The coram nobis court appointed counsel, who filed an amended petition. The State filed a motion to dismiss on the ground that the petition was untimely. Counsel then filed a motion to withdraw. The coram nobis court granted both the motion to withdraw and the motion to dismiss. On appeal, Petitioner argues that the coram nobis court erred in allowing his original counsel to withdraw without responding to the State's motion to dismiss and by dismissing his petition as untimely without holding an evidentiary hearing to determine whether due process required tolling of the statute of limitations. Upon our review of the record, we determine that Petitioner's claims, if true, would not entitle him to coram nobis relief and would not warrant tolling the statute of limitations. Therefore, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

Richard C. Strong, Nashville, Tennessee, for the appellant, Harvey Taylor.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; Glenn Funk, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Factual and Procedural Background*

In 2008, Petitioner was indicted by the Davidson County Grand Jury with one count of aggravated rape. On August 20, 2009, Petitioner pled guilty to the lesser included offense of rape and was sentenced to twelve years' incarceration. At the plea submission hearing, the State provided the following factual basis for Petitioner's plea:

[O]n May the 4th, 2007 [the Petitioner] entered [the victim's] room and had vaginal-penile intercourse with her. The witnesses would [have] testified that [the victim], who is a patient at Madison Health Care and Rehabilitation Center, which is a nursing home in Davidson [C]ounty, was seventy years old at [the] time, suffered from advanced condition of bipolar, diabetes, and a host of other ailments.

When Charlotte Boyd, on May the 5th, 2007—who is a certified nurse technician—entered [the victim's] room to find out how she was doing and take her to get a shower[,] [the victim] was very upset. She began telling [the] nurse—or, Certified Nurse Technician Boyd, again and again, that a large black man had entered her room last night and had had sex with her. At one point Ms. Boyd was continually asking her "What do you mean?" And the victim in the case used her hands to explain that this man had inserted his penis into her vagina. And she actually made hand gestures to convince Ms. Boyd that there was a problem.

Ms. Boyd, following the chain of command, reported the rape to Marcia Patterson. And as Marcia Patterson began to approach [the victim] to ask her about the incident [the victim] was frantically telling other CNTs, including Pamila Hatton, Diane Heddon, and Shawnta Brown, what had happened. At one point [the victim] was so upset that she poured water on the floor, [claiming] that her water just broke and that she needed someone to take her to the emergency room immediately because she was having a baby.

Finally, Linda Thompson who is the primary nurse of [the victim] was notified. And [the victim] . . . was taken into a room where Nurse Thompson began to ask her questions about what had happened last night. [The victim] reported over and over to Nurse Thompson that the man had come into her room, that he had put her legs over [his] shoulder, and that he had inserted his penis into her vagina.

At that point Detective Jason Terry with the Metropolitan Police Department was notified and met Linda Thompson and [the victim] at General Hospital. At General Hospital, Nurse Practitioner Beverly Byrum (ph.) would have testified that . . . she began doing a medical-legal exam. As part of the medical-legal exam she collected the victim's panties. She would have testified that she noted that there was blood in the crotch of [the victim's] panties. And during the medical-legal exam she noted bruising to the victim's inner thigh, a hematoma in the victim's vaginal wall, and small tears to all the sides of her vaginal wall. There were several swabs that were collected. And all of these items were sent to the TBI for analysis.

Detective Terry spoke with the [Petitioner] several times. And, although the . . . [Petitioner] provided several different [ac]counts of the incident he denied repeatedly ever having sexual contact with the victim. . . Detective Terry then provided the TBI with oral swabs from [the Petitioner]. And found in the crotch of [the victim's] underwear was semen. That semen matched the DNA profile of the [Petitioner].

*Harvey Taylor v. State*, No. M2012-01228-CCA-R3-PC, 2013 WL 655699, at *1-2 (Tenn. Crim. App. Feb. 21, 2013), *perm. app. denied* (Tenn. Aug. 14, 2013), *pet. to rehear denied* (Tenn. Feb. 20, 2014). Petitioner subsequently filed a petition for post-conviction relief, alleging ineffective assistance of counsel. *Id.* at *2. After a hearing, the post-conviction court denied relief. *Id.* at *4. On appeal, this Court affirmed the judgment of the post-conviction court. *Id*. at *7.

On October 11, 2012, while Petitioner's appeal on his post-conviction case was still pending before this Court, he filed a pro se petition for writ of error coram nobis, alleging the existence of "newly discovered or newly exculpatory materials evidences [sic]" that were discovered "through continued research by the Petitioner." On December 13, 2012, the coram nobis court appointed counsel. On August 23, 2013, counsel filed an amended petition and requested a hearing. On October 17, 2013, the State filed a motion to dismiss on the ground that the petition was untimely. On November 5, 2013, counsel filed a motion to withdraw, citing medical issues which would impede her ability to effectively represent Petitioner. On November 22, 2013, the coram nobis court granted counsel's motion to withdraw and took the State's motion to dismiss under advisement. On December 18, 2013, the coram nobis court filed an order granting the motion to dismiss and appointed counsel to represent Petitioner on appeal. On March 28, 2014, this Court granted Petitioner's motion to waive the thirty-day deadline for filing a notice of appeal. Petitioner filed a notice of appeal on April 4, 2014.

- 4 -

*Analysis*

Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105, which states:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b). A petition for a writ of error coram nobis "may be based upon any 'newly discovered evidence relating to matters litigated at the trial' so long as the petitioner also establishes that the petitioner was 'without fault' in failing to present the evidence at the proper time." *Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003). To be considered "without fault," the petitioner must show that "the exercise of reasonable diligence would not have led to a timely discovery of the new information." *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007)). The coram nobis court will then determine "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." *Id.* In the context of a guilty plea, relief may be available if the newly discovered evidence calls into question the knowing and voluntary nature of the plea. *Wlodarz v. State*, 361 S.W.3d 490, 501 (Tenn. 2012) (citing *Newsome v. State*, 955 S.W.2d 129, 134 (Tenn. Crim. App. 1998)). However, the writ of error coram nobis is "an *extraordinary* procedural remedy," designed to fill "only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (emphasis in original).

A petition for coram nobis relief must be filed within one year after the judgment becomes final. T.C.A. § 27-7-103. For the purposes of coram nobis relief, a judgment becomes final thirty days after the entry of the judgment in the trial court if no post-trial motion is filed, or upon entry of an order disposing of a timely filed post-trial motion. *Mixon*, 983 S.W.2d at 670. It has been the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Id.* Whether a claim is barred by an applicable statute of limitations is a question of law, which we review de novo. *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007)). The State bears the burden of raising

the statute of limitations as an affirmative defense. *Id.*; *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995).

Despite the one-year statute of limitations, when a petitioner seeks a writ of error coram nobis based on newly discovered evidence, due process considerations may require tolling the statute of limitations. *Harris*, 301 S.W.3d at 145 (citing *Workman v. State*, 41 S.W.3d 100, 103 (Tenn. 2001)). Our supreme court has held that, "before a state may terminate a claim for failure to comply with procedural requirements such as statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Workman*, 41 S.W.3d at 102 (quoting *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992)). To determine whether due process principles require tolling the statute of limitations, a court must balance the State's interest in preventing stale and groundless claims with the petitioner's interest in obtaining a hearing to present a later-arising ground for relief. *Harris*, 301 S.W.3d at 145 (citing *Workman*, 41 S.W.3d at 103). In balancing these interests, the court must apply a three-step analysis:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds for relief are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Id.* (quoting *Sands*, 903 S.W.3d at 301). As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration. *Seals v. State*, 23 S.W.3d 272, 278 (Tenn. 2000). Ignorance as to the existence of a claim does not create a "later-arising" claim for due process purposes. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State*, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994). Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness. *Harris*, 301 S.W.3d at 145.

In this case, Petitioner alleges that the rape kit, medical-legal examination results, TBI reports, and witness statements from the nursing home all constitute newly discovered evidence. Petitioner claims that, had he known of the existence of this evidence, especially the hearsay nature of the witness statements reporting the victim's disclosures, he would not have pled guilty but would have insisted upon going to trial. On appeal, Petitioner argues that the coram nobis court erred in allowing his original counsel to withdraw without responding to the State's motion to dismiss and by dismissing his petition as untimely without holding an evidentiary hearing to determine

whether due process required tolling of the statute of limitations. The State asserts that the coram nobis court properly dismissed the petition as untimely, noting that the Petitioner failed to offer any basis for due process tolling in his original petition, amended petition, or appellate brief.

Upon our careful review of the record in this case, we agree with the State that the Petitioner fails to allege any basis for due process tolling of the statute of limitations. "Although it may not be the role of the petition to prove a claim to a due-process override of the statute of limitations, the petition should at least articulate why principles of due process should prevail and allege how a due process claim would be proven." *State v. Thomas Edward Hogue*, No. M2005-02874-CCA-R3-CD, 2007 WL 674635, at *3 (Tenn. Crim. App. Feb. 28, 2007), *perm. app. denied* (Tenn. May 14, 2007). Petitioner has made no claims as to when or how he came to discover this evidence. Indeed, it appears to us that the evidence cited by Petitioner would not even qualify as newly discovered evidence. In his original petition, Petitioner states that the rape kit results, TBI reports, and witness statements were included in the discovery provided to his trial counsel. For example, at one point he specifically states, "The Rape Kit Result should have been presented by [trial counsel] d[ue] to her having a copy of the Discover[y]." This Court has previously held that "the fact that the documents had indeed been disclosed to the defense prior to the petitioner's guilty plea establishes that the documents are not newly discovered evidence." *Arthur W. Stamey, III v. State*, No. E2009-00996-CCA-R3-CD, 2010 WL 481198, at *6 (Tenn. Crim. App. Feb. 11, 2010), *perm. app. denied* (Tenn. June 17, 2010), *abrogated on other grounds by Wlodarz*, 361 S.W.3d at 501. Petitioner's claim that he was not personally aware of this evidence, even if true, would not entitle him to coram nobis relief.[1]

The main thrust of Petitioner's claim seems to be that his trial counsel was ineffective for failing to thoroughly investigate the case and to adequately review the discovery with him prior to his guilty plea. Ineffective assistance of counsel is not an appropriate ground for relief pursuant to a writ of error coram nobis. *See Domingo Ponce v. State*, No. M2004-02257-CCA-R3-CO, 2005 WL 1303125, at *3 (Tenn. Crim. App. May 31, 2005). These claims should have been raised in Petitioner's previous petition for post-conviction relief and are, therefore, waived. *See* T.C.A. § 40-30-104(d) ("The petitioner shall include all claims known to the petitioner for granting post-conviction relief . . . ."). Petitioner had an opportunity to present these claims in a meaningful time

---

[1] We note that most of the evidence claimed to be newly discovered by Petitioner, including the injuries to the victim and the presence of Petitioner's semen on her underwear, was referenced in the State's summary of the evidence presented at the guilty plea hearing. *Harvey Taylor*, 2013 WL 655699, at *1-2. Additionally, as to the potential hearsay issues with the various witness statements, trial counsel testified at the post-conviction hearing about this concern, *id.* at *3, and filed several motions to exclude detrimental testimony, *id.* at *7. Therefore, we find it hard to believe that Petitioner was not aware of this evidence prior to the filing of his petition for writ of error coram nobis.

- 7 -

and a meaningful manner, and there has been no showing that these grounds for relief arose after the statute of limitations began to run. Additionally, because Petitioner has not alleged grounds that, if true, would entitle him to coram nobis relief, the coram nobis court was not required to appoint a successor counsel to respond to the State's motion to dismiss or to conduct a hearing to determine whether due process should toll the statute of limitations.

*Conclusion*

For the foregoing reasons, the judgment of the coram nobis court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE