# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 3, 2015

## JAMIE LOU HANELINE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Decatur County**
**No. 01CR013     C. Creed McGinley, Judge**

---

**No. W2014-01713-CCA-R3-ECN  -  Filed March 31, 2015**

---

The petitioner, Jamie Lou Haneline, appeals the dismissal of his petition for the writ of error coram nobis. He was convicted of rape of a child in 2001 and received a sentence of thirty-eight years. In the petition for relief, which was filed in 2013, the petitioner alleged a newly discovered witness with information not previously known at trial. After a hearing, the court dismissed the petition as untimely and, further, found that the witness's testimony would not have changed the verdict in the petitioner's case. The petitioner contends that the error coram nobis court erroneously reached those conclusions. Following review of the record, we affirm the judgment of the court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Guy T. Wilkinson, District Public Defender, Camden, Tennessee, for the appellant, Jamie Lou Haneline.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Matthew Stowe, District Attorney General; and Scott A. Arch, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Procedural History and Factual Background

The facts underlying the petitioner's conviction, as recited by this court on direct appeal, are as follows:

[T]he victim in this case [] testified that she first met the [petitioner] when she was eleven years old. The twenty-three year old [petitioner] was a friend of [the victim's] mother's boyfriend. In February of 2000, shortly after they met, the [petitioner] began to flirt with [the victim], and he asked her to have sex with him. However, their sexual intimacy did not begin at that point. Although the [petitioner] moved to Pennsylvania for a period of a few months, their relationship resumed in August when the [petitioner] returned. At this point in time, [the victim] was twelve years old. [The victim] testified that, on September 9, 2000, she needed school supplies from a Wal-Mart store. The [petitioner] offered to take [the victim] to the store, which he did. However, when they left Wal-Mart, the [petitioner] took [the victim] to his residence, a mobile home that he shared with his grandfather, Byron Bean. [The victim] testified that the [petitioner] "snuck" her into the mobile home after Mr. Bean went to bed. She stated that the [petitioner] took her to his bedroom, flirted with her, and had sex with her twice. In addition, [the victim] performed oral sex on the [petitioner] when he asked her to. The [petitioner] used a condom because "he was afraid [she would] get pregnant." After this incident, the [petitioner] took [the victim] home.

On September 23, 2000, [the victim] was attending a birthday party at the home of her friend, Amy Cole. The [petitioner] picked her up from the party at around 8:00 p.m. [The victim] testified that they drove around for a while, after which the [petitioner] took her to his mobile home. Again, [the victim] waited outside until Mr. Bean went to bed; then the [petitioner] took her to his bedroom. In the bedroom, [the victim] and the [petitioner] watched television and had sexual intercourse again. The [petitioner] used a condom on this occasion as well. Early the next morning, the [petitioner] took [the victim] back to Amy Cole's house.

With respect to the incident on September 23, 2000, Amy Cole testified that the [petitioner] picked [the victim] up from the birthday party after dark. After a few hours, the [petitioner] returned [the victim] to the house, where she spent the rest of the night.

[The victim] testified that, a few days later, on approximately September 20, 2000, the [petitioner] unexpectedly came to her house. [The victim] was there alone. She stated that she and the [petitioner] had sex on her bed on this occasion.

Sometime after this last incident, the [petitioner] returned to [the

-2-

victim's] house. [The victim's] grandfather, who was at the house with [the victim], refused to allow her to leave with the [petitioner]. [The victim] became upset with her grandfather and attempted to commit suicide by taking a bottle of pain medicine. She was taken to the hospital, where her stomach was pumped. This experience prompted [the victim] to disclose to her mother her relationship with the [petitioner].

The jury found the [petitioner] guilty of the child rape that occurred on September 23, 2000. It found him not guilty of the conduct alleged to have occurred on September 9 and September 30.

*State v. Jamie Lou Haneline*, No. W2002-01773-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 515, *2-4 (Tenn. Crim. App. May 30, 2003). The petitioner subsequently filed a direct appeal, a post-conviction petition, and a petition for writ of error coram nobis. He was granted no relief in any of these matters.

On December 23, 2013, the petitioner filed the instant petition for writ of error coram nobis alleging newly discovered evidence in the form of a witness he claimed was unknown to him at the time of trial. He alleged that the witness would offer testimony that the petitioner was not present at the birthday party on the day the crime occurred. Following the appointment of counsel and the filing of an amended petition, a hearing was held on the matter.

The petitioner presented the testimony of Jacob Leahy, the alleged newly discovered witness. Mr. Leahy testified that he met the petitioner while the petitioner was in jail in 2001 awaiting trial on the rape charges. He further testified that Amy Cole was his half-sister, and he was at the birthday party held at her home on the night of the rape. Mr. Leahy stated that he did not see the petitioner present at the party at any time that evening. He acknowledged that people attended the party whom he did not know, but he claimed that he never forgot a face.

Mr. Leahy also testified about a car accident he was involved in during 1999. He testified that at the time of the party, he remained in a great deal of pain and "wasn't really coherent."

Shortly after the party, Mr. Leahy decided to go to California and was unaware of any rape allegations made against the petitioner. He stated that he was extradited back to Tennessee in 2001 and met the petitioner in jail. When he became aware of the nature of the allegations against the petitioner, Mr. Leahy told the petitioner that he had not seen him there that evening.

The petitioner also testified at the hearing. He acknowledged meeting Mr. Leahy in jail in 2001, but he claimed that Mr. Leahy did not mention the possibly exonerating information to him at that time. Rather, the petitioner contends that in August of 2012, the two were transferred together to the West Tennessee State Prison. The petitioner stated that in September, Mr. Leahy approached him and relayed the information to him.

The petitioner testified that he attempted to investigate the information he received from Mr. Leahy, but he was unsuccessful in his attempts. He claimed that, "I finally just filed the motion on my own" in July of 2013. He further claimed that the petition was not acted upon until his mother and an attorney checked and it was found in "some boxes" in the clerk's office.

On cross-examination, the petitioner testified that Mr. Leahy was incorrect that the information had been relayed in 2001. He noted that Mr. Leahy was "obviously kind of slow."

After hearing the proof presented, the error coram nobis court took the matter under advisement. On June 19, 2014, the court dismissed the petition. This timely appeal followed.

**Analysis**

On appeal, the petitioner contends that the error coram nobis court erred in dismissing his petition. He alleges that the court erroneously concluded both that the petition was time-barred and that Mr. Leahy would not have been a credible witness whose testimony would have changed the outcome of the trial.

Tennessee Code Annotated section 40-26-105 provides relief in criminal cases by petition for error coram nobis and states in pertinent part:

> Upon a showing by the [petitioner] that the [petitioner] was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

T.C.A. § 40-26-105(b) (2010). The writ of error coram nobis is "an *extraordinary* procedural remedy," providing relief in only a limited number of cases. *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (emphasis in original). "The purpose of this remedy 'is to bring to the

attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1966)). The decision of whether to grant or deny a petition for writ of error coram nobis on its merits rests within the sound discretion of the trial court. *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of evidence, or employs reasoning that causes an injustice to the complaining party. *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2000).

To obtain relief, the petitioner must show that the newly discovered evidence could not have been obtained before trial by either the petitioner or his counsel exercising due diligence. *Mixon*, 983 S.W.3d at 672. In the petition for relief, the petitioner must relate: (1) the grounds and the mature of the newly discovered evidence; (2) why the admissibility of the newly discovered evidence may have resulted in a different judgment had the evidence been admitted at the previous trial; (3) the petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (4) the relief sought by the petitioner. *Freshwater v. State*, 160 S.W.3d 548, 553 (Tenn. Crim. App. 1995).

Petitions for writ of error coram nobis are subject to a one-year statute of limitations. T.C.A. § 27-7-103 (2010); *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010). "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris*, 301 S.W.3d at 144 (citing *Mixon*, 983 S.W.2d at 670). Calculating the statute of limitations in this manner is consistent with the "longstanding rule that persons seeking relief under the writ must exercise due diligence in presenting the claim." *Mixon*, 983 S.W.2d at 670; *Harris*, 301 S.W.3d at 144. The State bears the burden of raising a violation of the statute of limitations as an affirmative defense. *Harris*, 301 S.W.3d at 144. Whether a claim is time-barred is a question of law, which we review *de novo*. *Id*. (citing *Brown v. Erachem Comilog, Inc.*, 231 S.W.3d 918, 921 (Tenn. 2007)).

In certain circumstances, due process considerations may require tolling the statute of limitations. *Workman v. State*, 41 S.W.3d 100, 101 (Tenn. 2001). To determine whether due process requires tolling, we must balance the State's interest in preventing "stale and groundless" claims against the petitioner's interest in having a hearing to present newly discovered evidence which may have led the jury to a different verdict if it had been presented at trial. *Id*. at 103. To balance these interests, courts should use a three-step analysis:

(1) determine when the limitations period would normally have begun to run; (2) determine whether the ground for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later-arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 297, 301 (Tenn. 1995); *see also Harris*, 301 S.W.3d at 145.

In its written order dismissing the petition, the coram nobis court found as follows:

The Petitioner . . . has filed a Petition for Writ of Error Coram Nobis seeking relief from his conviction and sentence over thirteen years ago. The Petitioner previously availed himself of the appellate process as well as a Petition for Post-Conviction which was overruled by the Court and affirmed on appeal. The Petitioner now seeks a Writ of Error Coram Nobis for newly discovered evidence concerning the existence of a witness that was unknown to him in 2001 when his case was tried and was subsequently discovered. The Petitioner was appointed counsel and the State filed a Motion for Dismissal alleging that the statute of limitation has run and that any witness that has been discovered was not credible.

A hearing was conducted on May 20, 2014 and the Court took proof from Jacob Leahy, the newly discovered witness as well as testimony from the Petitioner . . . . After considering all the pleadings in this matter as well as the evidence produced at the hearing the Court finds that the [Petitioner]'s Petition shall be dismissed for the following reasons:

Any applicable statute of limitation has long since run in the above styled case. The Petitioner's Petition for Writ of Error Coram Nobis was filed well outside the one year statute of limitation. . . . Notwithstanding the fact that the [Petitioner] himself claims he did not discover this evidence until 2012 the Court is convinced otherwise. The witness disclosed that he had met the [Petitioner] in county jail some twelve years or thirteen years ago although the [petitioner] himself claims not to have discovered the evidence until 2012 when they were housed with the Tennessee Department of Correction[]. The [P]etitioner offers no real reason for not discovering Mr. Leahy was a potential witness until 2012.

Even if the Court had found that the Petition was filed within the statute of limitations, after examining the testimony of Mr. Leahy the Court finds that

he would not be a credible witness. At the time of trial this witness described himself as not being coherent and would not have been persuasive at trial. Therefore the court finds even had this witness been known and produced at trial this evidence would not have produced a different result. The Court after examining the record finds that the proof was substantial and that this particular witness with self-described mental disabilities as well as a history of commitments would not have had any impact whatsoever upon the jury's finding . . . the [Petitioner] guilty at the trial of the case.

## I. Statute of Limitations

There is no dispute in this case that the petition for error coram nobis was filed outside the applicable statute of limitations. The petitioner was convicted in 2001 and failed to file this petition until 2013, well outside the one-year statute. The question before us then is whether due process requires the tolling of the statute of limitations.

The petitioner contends that he "acted diligently" to bring the newly discovered evidence to the court's attention by filing the petition within one year of his discovery of the information. He bases his argument on his own testimony that he only learned of Mr. Leahy's information in 2012. He acknowledges that Mr. Leahy gave a contradictory version, stating that he informed the petitioner in 2001 just prior to trial. The petitioner urges us to conclude that under the "common sense idea," his version is more credible because there would be no reason not to attempt to use the information at trial if he was aware of it. He states there would be no credible reason which would cause him to "wait for 12 years to act upon the information."

The petitioner's argument must fail. The error coram nobis court accredited the testimony of Mr. Leahy and concluded that the petitioner was given this information in 2001. That is not a finding which this court may revisit. *See State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). As has been noted numerous times, it is not the province of this court to reweigh or reevaluate credibility determinations made by the trier of fact.

Moreover, implicit in the court's findings is that the claim is not later-arising if the information was given to the petitioner pre-trial as the court concluded. That being said, there is simply no evidence in the record which would support a conclusion that due process requires tolling the statute of limitations.

## II. Credibility of the Witness

The petitioner also contends that the court erred in concluding that Mr. Leahy would

not have been a credible witness at trial because of his mental status and the court's conclusion that his testimony would not have changed the outcome of the trial. The petitioner contends that the court's reliance on the evidence of Mr. Leahy's mental issues was improper because "no one could know [Mr. Leahy's] capabilities to testify on the day of the trial," arguing it would be pure speculation. He continues, stating that "[t]o say Mr. Leahy's demeanor on the day of trial would be such that his testimony would have no impact is a statement that cannot be made with any degree of certainty." We do agree with the petitioner that the coram nobis court did conclude that Mr. Leahy, who admitted "not being coherent" at the time of trial, "would not have been persuasive at trial." As such, the court concluded his testimony at trial would not have changed the outcome, thereby preventing the petitioner from establishing his claim for coram nobis relief.

As pointed out by the State, the court's findings were based upon credibility determinations made after hearing the witnesses and the evidence presented. As previously noted, this court has repeatedly held it is not the province of this court to revisit credibility determinations made by the trier of fact or reweigh the evidence presented. *State v. Mitchell*, 810 S.W.2d at 735. Mr. Leahy testified he was not coherent at the time. There was evidence of commitments to mental institutions. The error coram nobis court heard the testimony and was able to assess Mr. Leahy's demeanor. It was the province of that court to make such a decision. The record reflects no abuse of discretion in the court's determination.

Further, the record does not support that the testimony would have actually contradicted any of the evidence presented at the trial, which the court noted was overwhelming. Both the victim and Amy Cole testified simply that the petitioner picked up the victim at Amy Cole's house. There was no testimony that the petitioner ever entered the house or remained on the property for any length of time. Thus, the fact that Mr. Leahy did not see the petitioner is not contradictory. As such, it would have provided the petitioner little, if any, defense against the charges.

## CONCLUSION

Based upon the foregoing, the judgment of the error coram nobis court is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE