IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
May 14, 2014 Session

## CYRUS DEVILLE WILSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 00231143    Seth Norman, Judge**

**No. M2013-01807-CCA-R3-CO - Filed July 30, 2014**

The petitioner, Cyrus Deville Wilson, appeals the denial of his petition for the writ of error coram nobis. The petitioner is currently serving a life sentence following his conviction for first degree murder. In his petition, the petitioner contended that he was entitled to relief because of recently recanted testimony by an eyewitness to the murder. The error coram nobis court concluded that the recantation was not credible and denied relief. On appeal, the petitioner contends that the court erred in denying relief because it improperly assessed the evidence presented and applied an incorrect legal standard. After a review of the record, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROGER A. PAGE , JJ., joined.

Patrick T. McNally, Nashville, Tennessee, for the appellant, Cyrus Deville Wilson.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Dan H. Hamm, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

## Procedural History

In February of 1993, the petitioner was indicted by a Davidson County grand jury for the first degree murder of the victim, Christopher Luckett. As recited on direct appeal, the facts underlying the petitioner's convictions are as follows:

On September 15, 1992, Metro Davidson police officers found the body of [the victim] partly lodged underneath a chain link fence in East Nashville. The victim had sustained a fatal gunshot wound to the head. The officers also found empty shotgun shells, shotgun "wadding," and a blue duffel bag at the crime scene. . . . .

At trial, the state first called Chiquita Lee, the victim's sister, in order to establish the victim's age and health. Ms. Lee testified that the victim was nineteen years old at the time of his murder and that he had a deformity in his right arm that prevented its full use. . . .

The state . . . presented evidence to establish a motive for the murder. Officer Phillip Wright testified that during routine patrol on or about July 20, 1992, he was stopped by the [petitioner] who reported that the victim . . . had stolen his car. Officer Wright further testified that, when asked if he wanted to swear out a warrant against the victim, the [petitioner] replied "not right now". . . .

Next, the state called two eyewitnesses to the murder. The first, Rodriguez Lee, testified that the [petitioner] had a twelve-gauge shotgun[,] which came from Mr. Lee's house. Lee added that he saw the [petitioner] remove the gun from a blue duffel bag. Lee stated that he saw the [petitioner] chasing the victim on the night of the murder. He further testified that the victim got stuck underneath a patio fence. Lee then stated that he heard the victim plead[,] "please don't kill me." According to Lee, the [petitioner] paid no heed to the victim's pleas for mercy. Instead, he fired point-blank into the victim's face. Marquis Harris, another witness for the prosecution, also testified that he saw the [petitioner] shoot the victim in the face.

Other witnesses corroborated this testimony. Steve Crawley testified that he saw the [petitioner] three weeks prior to the murder carrying a shotgun. Crawley also testified that he witnessed the [petitioner] on the night of the murder "acting shaky and nervous." Another witness, Frederick Davis, testified that he overheard the [petitioner] state that "he was going to get" the

victim for stealing the [petitioner's] car.

The [petitioner] testified as a witness on his own behalf. The [petitioner] denied any involvement in the murder, contending that he was at home with his girlfriend at the time of the shooting. The [petitioner] did admit that, after the victim stole his car, he threatened to "get" the victim. On cross-examination, the state asked the [petitioner] if, on the night of the shooting, he was in possession of a shotgun. The [petitioner] responded that he was not. . . .

At the close of the defense's case in chief, the state called Detective Bill Pridemore as a rebuttal witness. Prior to trial, Pridemore had made a summary of statements given to him by Rodriguez Lee during questioning. The statements corroborated Lee's trial testimony.

*State v. Cyrus Deville Wilson*, No. 01C01-9408-CR-00266, 1995 Tenn. Crim. App. LEXIS 892, at \*2-5 (Tenn. Crim. App. Nov. 15, 1995). Detective Pridemore, who questioned Mr. Lee, testified that Mr. Lee originally identified Benji Amos as being present during the murder. However, after further investigation, Detective Pridemore proved that identification to be false by establishing that Mr. Amos was incarcerated at the time of the murder. Following the trial, the petitioner was convicted as charged by the jury, and the trial court imposed a term of life imprisonment. *Id.* at \*5.

Thereafter, the petitioner filed a direct appeal with this court alleging that the State's failure to disclose some of the petitioner's statements constituted prosecutorial misconduct, that the trial court improperly allowed a material witness to testify during the State's rebuttal, and that the trial court erred by allowing witnesses whose names were allegedly not disclosed to the defense prior to trial nor listed on the indictment to testify. *Id.* at \*1-2. After review, this court affirmed the petitioner's conviction. *Id.* at \*17.

Next, the petitioner filed a petition for post-conviction relief alleging ineffective assistance of counsel and due process violations. *Wilson v. State*, 367 S.W.3d 229, 232 (Tenn. 2012). After an evidentiary hearing, the post-conviction court dismissed the petition but neglected to state its findings of fact and conclusions of law with regard to each ground as required by statute. *Id.*; *see also* T.C.A. § 40-30-111(b) (2014). Because the disposition was inadequate, this court vacated the post-conviction court's decision and remanded the case. *Cyrus Deville Wilson v. State*, No. 01C01-9811-CR-00448, 1999 Tenn. Crim. App. LEXIS 1118, at \*16 (Tenn. Crim. App. Oct. 29, 1999). On remand, the post-conviction court held another evidentiary hearing and again denied the petition, and this court then affirmed. *Wilson*, 367 S.W.3d at 232; *Cyrus Deville Wilson v. State*, No. M2000-01237-CCA-R3-PC,

2001 Tenn. Crim. App. LEXIS 361, at *1 (Tenn. Crim. App. May 14, 2001).

The petitioner next filed a petition for writ of error coram nobis claiming *Brady* and due process violations after discovering a handwritten note in the prosecutor's files which stated "good case but for most of Ws are juveniles who have already lied repeatedly." *Wilson*, 367 S.W.3d at 232-33. The note referred to Marquis Harris and Rodriguez Lee, who were juveniles and testified as the only eyewitnesses to the murder. *Id.* at 233. This note was not shared with the petitioner before trial, and he claimed in his petition that the witnesses' having previously lied affected the outcome of the trial, undermined the jury verdict, and warranted a new trial. *Id.*

The coram nobis court tolled the one-year statute of limitations for due process reasons but dismissed the petition without an evidentiary hearing because it considered the prosecution's note to be work product, which was not subject to disclosure. *Id.* The petitioner appealed, and this court reversed the coram nobis court and remanded the case for an evidentiary hearing. *Id.*; *Cyrus Deville Wilson v. State*, No. M2009-02241-CCA-R3-CO, 2011 Tenn. Crim. App. LEXIS 259, at *7 (Tenn. Crim. App. Apr. 6, 2011). However, the Tennessee Supreme Court reversed this court's decision because it concluded that the note did constitute work product, that the note was thus not admissible at trial, and that the coram nobis court had properly denied the petition without an evidentiary hearing. *Wilson*, 367 S.W.3d at 237. Accordingly, the judgment of the coram nobis court was reinstated. *Id.*

While the petitioner's first petition for writ of error coram nobis was pending in October of 2010, Rodriguez Lee, one of the eyewitnesses from the trial, executed an affidavit in which he recanted his earlier testimony. He stated that he was not an eyewitness to the shooting of the victim and that he did not even see the petitioner on the night of the murder. In his affidavit, Mr. Lee specifically acknowledged that he had given false testimony during the petitioner's trial.

Upon learning of Mr. Lee's recantation, the petitioner filed the instant petition for writ of error coram nobis. The petitioner claimed that Mr. Lee's affidavit and recanted testimony constituted newly discovered evidence of such a significant nature as to warrant a new trial. The coram nobis court tolled the statute of limitations, appointed counsel to assist the petitioner, and held an evidentiary hearing in April of 2013. To bolster Mr. Lee's recanted testimony, the petitioner offered an affidavit and testimony from Rashime Williams. He also introduced a forensic analysis of the alleged murder weapon, the shotgun formerly owned by Mr. Lee, which concluded that the shotgun was not the murder weapon.

In addition to the testimony regarding the recantation, during the evidentiary hearing, Mr. Lee testified that he was thirteen at the time of the murder; Mr. Lee also listed his age

as thirteen at the time of the murder in his affidavit. However, on cross-examination, Mr. Lee admitted that he was actually fifteen when the murder occurred. Mr. Lee also testified that he had only been convicted for theft but later admitted that he had also been convicted of aggravated assault.

Mr. Williams, a convicted felon and cousin of the petitioner, testified at the evidentiary hearing, even though he was never called to testify during the original trial. Mr. Williams testified that the police had recently retrieved a shotgun from his residence which the petitioner had given him. The petitioner testified that this was the only shotgun that he had ever owned, and Mr. Williams confirmed that the shotgun was in his possession during the murder. This testimony was offered to establish that the gun Mr. Lee identified at trial as the murder weapon could not have been the murder weapon.

During cross-examination, the State questioned Mr. Williams about the petitioner's possible motive for committing the murder. During the original investigation, Mr. Williams had informed the police that the petitioner's likely motive was revenge for the victim's theft of the petitioner's car. However, at the hearing, despite these earlier statements, Mr. Williams claimed ignorance and suggested asking the petitioner. On cross-examination, however, Mr. Williams acknowledged his prior statements regarding motive.

The coram nobis court denied the petition for writ of error coram nobis because it was not reasonably well satisfied that the testimony at the evidentiary hearing was true and that the testimony at trial was false. Moreover, the court noted that other considerations would preclude coram nobis relief even if the witnesses were considered to be credible. The petitioner now appeals the coram nobis court's denial of relief.

**Analysis**

On appeal, the petitioner claims that the coram nobis court abused its discretion in denying the writ of error coram nobis because it erroneously assessed the evidence and applied an incorrect legal standard. The State contends that the coram nobis court properly denied relief based on its finding that the testimony of the witnesses during the evidentiary hearing was unreliable. We conclude that the coram nobis court did not abuse its discretion in denying the petition because the court reasonably assessed the evidence and applied the proper legal standard.

The purpose of a writ of error coram nobis is to bring to the attention of the court an unknown fact that may have caused a different result at trial had it been known. T.C.A. § 40-26-105; *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1966). The petition for writ of error coram nobis is an "*extraordinary* procedural remedy" that "fills only a slight gap

into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). To establish coram nobis relief, the petitioner must show that he is without fault in failing to present the evidence at the proper time during the trial, that the evidence is subsequently and newly discovered, and that the evidence may have resulted in a different outcome if known at trial. T.C.A. § 40-26-105(b). Therefore, the scope of a writ of error coram nobis is constrained to errors that were not and could not be litigated at trial. *Id.*

Recanted testimony may qualify as newly discovered evidence, which can serve as a basis for coram nobis relief, only if three criteria are satisfied: (1) the court must first be reasonably well satisfied that the testimony at trial was false and that the new testimony is true; (2) the petitioner must have been reasonably diligent in discovering the new evidence, must have been surprised by the false testimony, or must have been unable to know the falsity of the testimony until after trial; and (3) the court must find that the jury may have reached a different conclusion if the new evidence was considered. *State v. Vasques*, 221 S.W.3d 514, 527 (Tenn. 2007); *Mixon*, 983 S.W.2d at 673 n.17. In *Vasques*, the court summarized the standard as a judgment of "whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different." 221 S.W.3d at 527 (quoting *State v. Roberto Vasques*, No. M2004-00166-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 1100, at *36-37 (Tenn. Crim. App. Oct. 7, 2005)). The *Vasques* court further explained that "this interpretation upholds the traditional, discretionary authority of our trial judges to consider the new evidence in the context of the trial, to assess its veracity and its impact upon the testimony of the other witnesses, and to determine the potential effect, if any, on the outcome." *Id.* at 527-28.

In Tennessee, the decision to grant or deny a petition for writ of error coram nobis rests within the sound discretion of the trial court. *Wilson*, 367 S.W.3d at 235. Therefore, appellate courts review a trial court's decision to grant or deny the petition under an abuse of discretion standard. *Id.* This is a review-constraining standard that requires less intrusive appellate review. *Harris v. State*, 301 S.W.3d 141, 149 (Tenn. 2010) (Koch, J., concurring). A trial court abuses its discretion if it applies an incorrect legal standard, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes injustice to the complaining party. *Wilson*, 367 S.W.3d at 235; *State v. Garrett*, 331 S.W.3d 392, 401 (Tenn. 2010).

## I. Assessment of the Evidence

As noted, in a coram nobis proceeding based on recanted testimony, the trial judge must first consider the recanted testimony and be reasonably well satisfied with its veracity. *Vasques*, 221 S.W.3d at 527. Furthermore, the assessment of witness credibility is left to the sound discretion of the lower court. *Johnson v. State*, 370 S.W.3d 694, 700 (Tenn. Crim.

App. 2011); *Roland Bennett v. State*, No. E2004-01416-CCA-R3-PC, 2005 Tenn. Crim. App. LEXIS 706, at *14 (Tenn. Crim. App. July 14, 2005). Appellate courts do not reassess a lower court's determinations concerning witness credibility because factual questions involving the credibility of witnesses are matters for the lower court to resolve. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009); *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006).

Here, the coram nobis court was not reasonably well satisfied that the original trial testimony was false and that the new testimony was true. The court based this decision on inconsistencies between Mr. Lee's testimony and his affidavit concerning his age and criminal history, on Mr. Williams' attempts to evade a question during his testimony regarding motive, and on the court's interpretation that the shotgun evidence only duplicated evidence from the trial. These findings are supported by the record.

During the evidentiary hearing and in his affidavit, Mr. Lee stated that he was thirteen at the time of the murder. Using subtraction and his birth date, it was subsequently proven during Mr. Lee's testimony that he was actually fifteen at the time of the murder. The court stated that these inconsistencies evidenced a lack of appreciation for the importance of telling the truth under oath. Furthermore, Mr. Lee initially stated during cross-examination that he had one prior conviction, for theft, but subsequently admitted that he had also been convicted of aggravated assault. The court observed that Mr. Lee told the truth about his criminal convictions only after rigorous questioning by the State, further illustrating his lack of appreciation for telling the truth while under oath. Due to his perceived lack of appreciation for truth-telling while under oath, the coram nobis court was not reasonably well satisfied with the credibility of Mr. Lee's testimony at the evidentiary hearing. Additionally, the court noted that the jury was presented with proof of Mr. Lee's untrustworthiness at the trial but still convicted the petitioner. At trial, Mr. Lee identified an accomplice to the murder who could not have been involved because he was incarcerated at the time.

The coram nobis court also found the testimony of Mr. Williams to be unreliable. The court noted that Mr. Williams had been convicted of several felonies and was never called as a witness at the original trial. The court considered Mr. Williams' attempts during the evidentiary hearing to evade questions about his statements to police regarding the petitioner's possible motive for committing the murder as further evidence that he was not a credible witness. The court interpreted Mr. Williams' attempted evasions as an example indicating a tendency toward contradictory testimony. The court, therefore, concluded that Mr. Williams was not a credible witness.

In the final analysis, the coram nobis court noted that while Mr. Lee's lapses of memory regarding his age and criminal history might be considered honest mistakes, they

illustrated a lack of appreciation for the importance of telling the truth under oath. Likewise, the court interpreted Mr. Williams' attempts to evade answering questions under oath to indicate a tendency toward contradictory testimony. The court also viewed the shotgun evidence as proof of Mr. Lee's dishonesty at trial rather than proof of his reliability during the evidentiary hearing. Furthermore, the shotgun evidence could not negate the remaining evidence from trial used to establish the petitioner's guilt.

Based on these considerations, the coram nobis court was not "reasonably well satisfied" that the testimony given at trial was false and that the testimony given at the evidentiary hearing was true. Because assessment of witness credibility is a factual question within the purview of the lower court, we will not re-weigh the evidence. *See Dellinger*, 279 S.W.3d at 292. In our view, the coram nobis court based its conclusion on a reasonable assessment of the evidence, and the petitioner is entitled to no relief.

## B. Application of the Legal Standard

A writ of error coram nobis will be granted if "the judge determines that such [newly discovered] evidence *may have* resulted in a different judgment, had it been presented at the trial." T.C.A. 40-26-105(b) (emphasis added). The petitioner is correct in noting that the coram nobis court twice wrote in its order that the result at trial "would not have" changed had the jury heard the recanted testimony. This court is of the opinion that the coram nobis court's use of a "would not have" formulation does not necessarily signify the application of an incorrect legal standard. *See Kenneth Alan Steele v. State*, No. E2009-02376-CCA-R3-PC, 2011 Tenn. Crim. App. LEXIS 176, at *25-26 (Tenn. Crim. App. Mar. 10, 2011) (Witt, J., concurring); *see also Billy Ray Irick v. State*, No. E2010-02385-CCA-R3-PD, 2011 Tenn. Crim. App. LEXIS 367, at *44-45 n.5 (Tenn. Crim. App. May 23, 2011) (stating that the coram nobis court applied the proper "may have" standard despite the use of an improper "would not have" negative form in its opinion).

Here, the coram nobis court expressly applied the "may have" standard elsewhere in its findings; therefore, this court views the coram nobis court's "would not have" formulation as its attempt to create the negative form of the correct "may have" standard. As Judge Witt observed, the more proper negative form of the "may have" standard is "could not have," and we encourage court's in the use of that term. However, due to the coram nobis court's use of the proper "may have" standard elsewhere in its order, we hold that the proper legal standard was applied despite the court's use of an improper negative formulation.

The consideration of the error coram nobis court in reaching its conclusion lends credence to our conclusion that the proper standard was applied. The court pointed to the overwhelming amount of other evidence that could have been used to convict the petitioner

absent Mr. Lee's testimony. The court noted that Officer Wright testified that the petitioner told him that the victim stole the petitioner's car, that Mr. Harris also witnessed the murder, that Mr. Davis heard the petitioner state his intention to seek revenge on the victim for having stolen his car, and that Mr. Crawley testified to having seen the petitioner carrying a shotgun in the weeks leading up to the murder. The coram nobis court specifically found that even without the testimony of Mr. Lee, the outcome at trial could not have changed due to the quality and quantity of evidence against the petitioner.

Furthermore, the coram nobis court's application of the "may have" legal standard is inconsequential to its ruling. "[I]n a coram nobis proceeding, the trial judge must *first* consider the newly discovered evidence and be 'reasonably well satisfied' with its veracity." *Vasques*, 221 S.W.3d at 527 (emphasis added). The court found that the testimony from the evidentiary hearing was not credible because it was not reasonably well satisfied as to the veracity of the testimony. This decided the issue in favor of the State and ended the petitioner's bid for relief. The remaining portion of the court's order, which included its use of the legal standard questioned here, had no bearing on the outcome of the case because it was not essential to the court's holding.

## III. Conclusion

For the foregoing reasons, we conclude that the coram nobis court did not abuse its discretion in denying the petition for writ of error coram nobis. Therefore, the judgment of the coram nobis court is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE

-9-