# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### January 13, 2015 Session

## CHARLES EDWARD MEEKS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Grundy County**
**No. 2639     Thomas W. Graham, Judge**

---

**No. M2014-01170-CCA-R3-ECN - Filed February 20, 2015**

---

In 1994, a jury found the Petitioner, Charles Edward Meeks, guilty of first degree premeditated murder, and the trial court sentenced him to serve a life sentence in prison. On direct appeal, this Court affirmed the Petitioner's conviction and sentence. *See State v. Charles Edward Meeks*, No. 01C01-9506-CC-00170, 1995 WL 687695, at *1 (Tenn. Crim. App., at Nashville, Nov. 21, 1995), *perm. app. denied* (Tenn. May 6, 1996). In March 1997, the Petitioner filed a post conviction petition, and this Court affirmed the post-conviction court's denial of relief. *Charles Edward Meeks v. State*, No. 01C01-9807-CC-00295, 1999 WL 173972, at *1 (Tenn. Crim. App., at Nashville, March 30, 1999), *perm. app denied* (Tenn. Oct. 11, 1999). On January 10, 2005, the Petitioner filed for a writ of error *coram nobis* alleging that he had discovered new evidence. The State filed a response to the petition requesting that the trial court dismiss the petition as untimely. The trial court agreed, and dismissed the petition on that basis. We affirm the trial court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

B. Jeffery Harmon, Public Defender, and Robert G. Morgan, Assistant Public Defender, Jasper, Tennessee for the appellant, Charles Edward Meeks.

Herbert H. Slatery, III, Attorney General and Reporter; Brent C. Cherry, Senior Counsel; J. Michael Taylor, District Attorney General; and David L. Shinn, Jr., Assistant District Attorney General for the appellee, State of Tennessee.

## OPINION
### I. Facts and Procedural History

A Grundy County jury convicted the Petitioner of the first degree premeditated murder of Charles Coffelt, and the trial court sentenced the Petitioner to serve life in prison. On direct appeal, this Court summarized the facts presented at trial as follows:

In January, 1994, the [Petitioner] was shot in the forehead with a .22 caliber bullet. The bullet lodged in his right frontal sinus and remained there for several months. On February 19, 1994, the [Petitioner] was admitted to the hospital to have an abscess treated that had formed around the wound. He was discharged from the hospital on Wednesday, February 23, 1994, and was given two Percocets and a prescription for antibiotics. Percocet is a Schedule II drug used for moderate pain.

On Saturday, February 26,1994, the [Petitioner] was suffering from a severe headache. Rose Meeks, the [Petitioner]'s ex-wife, called a doctor at the hospital where the [Petitioner] had been treated, who prescribed Percocet for the [Petitioner]'s pain. At about 4:00 p.m., Ms. Meeks drove the [Petitioner] to the hospital where she picked up the prescription. Ms. Meeks then drove to a pharmacy and had the prescription filled. Between 6:00 and 8:30 p.m., she gave the paper bag containing the prescription bottle to the [Petitioner], who immediately took "some" of the drug. On the way home from the hospital, Ms. Meeks stopped at a liquor store and the [Petitioner] purchased some liquor.

After arriving home at approximately 10:30 p.m., the [Petitioner] prepared a mixed drink for himself and Ms. Meeks. He also took some more Percocet. The [Petitioner] testified that he had taken a total of four to five Percocets that day. Shortly after they arrived home, Ms. Meeks invited Ann Coffelt and the victim, Charles Coffelt, over for a visit. Ann Coffelt is Ms. Meeks' sister. Upon the Coffelts' arrival between 11:00 and 11:30 p.m., the [Petitioner] mixed himself another drink and also fixed one for the victim. The [Petitioner] testified that he had had no other alcohol that day.

After visiting for a few minutes, the [Petitioner] and the victim began arguing. Although the exact sequence of events was disputed at trial, the [Petitioner] testified that the victim had struck him with his fist "right between the eyes." He testified that, after hitting him, the victim "came back at me again with another right," at which point the [Petitioner] produced a pistol and shot the victim twice. Although the [Petitioner] subsequently administered CPR to the victim, Mr. Coffelt died a short time later. The [Petitioner] was taken into police custody at approximately 11:45 p.m., and gave a sworn

-2-

statement at approximately 2:00 a.m. on February 27, 1994. The TBI agent who took the statement testified that the [Petitioner] was "very nervous" but "sober."

*Meeks*, 1995 WL 687695, at *1.

The Petitioner filed a post-conviction petition in 1997, asserting that his trial counsel was ineffective in failing to prepare and present evidence at trial of the Petitioner's lack of capacity for intent to commit murder and in failing to seek a jury instruction regarding such "diminished capacity." He also asserted that trial counsel was ineffective because he declined to make an opening statement to the jury. This Court affirmed the post-conviction court's denial of relief, concluding that the Petitioner had not established that trial counsel was ineffective. *Meeks*, 1999 WL 173972, at *8.

On January 10, 2005, the Petitioner, *pro se*, filed for a writ of error *coram nobis*. The State filed a motion to dismiss the petition as time-barred. After several amendments to the petition and the appointment of an attorney, the trial court filed an order granting the State's motion to dismiss. In its order dated, May 16, 2014, the trial court made the following findings:

> [The] Petitioner's requested writ is barred by the one year statute of limitation found at T.C.A. § 27-7-103. It is a matter of record that the Petitioner's complained of evidence was known to [the] Petitioner no later than November 7, 1997. The Petition in this case was not filed until January 2, 2005, more than one year having lapsed since the evidence became known to the Petitioner, the Petition is untimely filed.

(Citation omitted). It is from this judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner argues that the trial court erred when it dismissed his petition for a writ of error *coram nobis* because his newly discovered evidence entitles him to relief. The Petitioner submits that the newly discovered evidence in his case is an incident report that included a statement by the Petitioner following the shooting. The State responds that the trial court correctly dismissed the Petitioner's claim as untimely because the evidence the Petitioner claims existed during the limitations period. We agree with the State.

Tennessee Code Annotated section 40-26-105 (2012) provides:

There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith. . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which are litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at trial.

It is well-established that the writ of error *coram nobis* "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). Generally, a decision whether to grant a writ rests within the sound discretion of the *coram nobis* court. *See State v. Hart*, 991 S.W.2d 371, 375 (Tenn. Crim. App. 1995). We, therefore, review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).

A petition for a writ of error *coram nobis* must be filed within one year of the judgment becoming final in the trial court. T.C.A. § 27-7-103. This statute of limitations "is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010); *see Mixon*, 983 S.W.2d at 670 ("[W]e reject the contention . . . that the statute does not begin to run until the conclusion of the appeal as of right proceedings."). In the present case, the judgment became final in August of 1998. The Petitioner did not file this petition for writ of error *coram nobis* until January 2, 2005, more than six years later.

The one-year statute of limitations for a petition for writ of error *coram nobis* may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. *Harris*, 301 S.W.3d at 145. In determining whether the statute should be tolled, the court must balance the petitioner's interest in having a hearing with the State's interest in preventing a claim that is stale and groundless. *Id*. Generally, "before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). The *Burford* rule requires three steps:

(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are

> "later arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 299, 301 (Tenn. 1995). As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration. *Seals v. State*, 23 S .W.3d 272 (Tenn. 2000). Discovery of or ignorance to the existence of a claim does not create a "later-arising" claim. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State*, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994).

In support of his assertion that he is entitled to relief due to newly discovered evidence, the Petitioner submitted an offense report dated February 26, 1994. The reporting officer is Virgil McNeece and the report states as follows:

> [The Petitioner] told me that the man came in his house and started beating on him and he shot him then he asked me what I would do, also wanted to know how Charles Coffelt was. I told him I didn't know. He said I didn't want to shoot him but he shouldn't of [sic] come in his house and started on him. Then he said he wanted his wife to call his lawyer.

The Petitioner knew at the time of his trial that he had made statements to the police about the victim's presence in the Petitioner's house and the circumstances surrounding the shooting. Even assuming that the Petitioner was unaware of his statements due to the medication and alcohol he had taken that night, testimony from the November 1997 post-conviction hearing indicates that the Petitioner was aware of his statements to police. At this hearing the Petitioner's trial counsel testified that he knew of the statement the Petitioner had made the night of his arrest and possessed a copy of the statement. Further, trial counsel stated that both the Petitioner and his wife testified at trial about the victim's assault on the Petitioner.

Because the Petitioner's claim is not "later-arising," we do not address the third step in the analysis, namely the reasonableness of the delay. *See Sands*, 903 S.W.2d at 301. The Petitioner has failed to demonstrate that the statute of limitations should be tolled in his case; therefore, we conclude that the trial court properly dismissed his untimely petition for *coram nobis* relief. *See id.* The Petitioner is not entitled to relief.

## III. Conclusion

Based upon the foregoing reasoning and authorities, we affirm the trial court's dismissal of the Petitioner's petition.

_____
ROBERT W. WEDEMEYER, JUDGE