IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs January 29, 2020

## LEONARD EDWARD SMITH v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Hamblen County**
**No. 2017-CR-383      Thomas J. Wright, Judge**

_____

## No. E2019-00596-CCA-R3-ECN

_____

In 1985, a Hamblen County jury convicted the Petitioner, Leonard Edward Smith, of the first degree felony murder of victim Pierce and the first degree premeditated murder of victim Webb. Multiple appeals and remands ensued, following which the Petitioner was ultimately sentenced to two consecutive life terms. In 2017, the Petitioner filed a motion to reopen post-conviction proceedings and a petition for a writ of error coram nobis. The trial court held a hearing and denied relief. On appeal, the Petitioner contends that his motion to reopen should have been granted based on newly discovered evidence, which deprived him of a fair trial, and that he is entitled to coram nobis relief based upon the newly discovered evidence. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Jefferson B. Fairchild, Rogersville, Tennessee, for the appellant, Leonard Edward Smith.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; and Barry P. Staubus, District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Facts and Background

This case arises from the Petitioner's involvement in the shooting deaths of the victims, John Pierce and Novella Webb. In an opinion addressing his petition for post-conviction relief, our supreme court summarized the facts as follows:

In 1984 the [Petitioner], Leonard Edward Smith, his friend, David Hartsock, and his girlfriend, Angela O'Quinn, robbed two small grocery stores in rural Sullivan County. Armed with a .32 caliber pistol, [co-defendant] Hartsock entered Malone's Grocery alone, while [the Petitioner] and O'Quinn waited for him outside the store in [the Petitioner's] car. During the course of the robbery, [co-defendant] Hartsock shot and killed John Pierce. The trio left Malone's Grocery and proceeded to [Novella] Webb's store near the Carter–Sullivan County line. Both [the Petitioner] and [co-defendant] Hartsock entered Webb's store. [The Petitioner] was carrying the gun, and during the robbery, he shot and killed Novella Webb. The victim and her husband owned and operated the store.

*Smith v. State*, 357 S.W.3d 322, 328 (Tenn. 2011) ("*Smith V*"). For these crimes, after multiple appeals and rulings by this court and our supreme court, and after the State declined to seek the death penalty on the fourth remand for sentencing, the Petitioner was ultimately sentenced to two consecutive terms of life imprisonment. *See Smith V*, 357 S.W.3d at 328; *State v. Smith*, 993 S.W.2d 6 (Tenn. 1999) ("*Smith IV*"); *State v. Smith*, 857 S.W.2d 1 (Tenn. 1993) ("*Smith II*"); *see also State v. Smith*, 755 S.W.2d 757 (Tenn. 1988) ("*Smith I*"); *Smith v. Westbrooks*, No. 2:13-CV-132-JRG-MCLC, 2016 WL 5724321, at *2 (E.D. Tenn. Sept. 30, 2016); *State v. Smith*, 906 S.W.2d 6 (Tenn. Crim. App. 1995) ("*Smith III*").

In 2016, the Petitioner filed a *pro se* petition for writ of habeas corpus in federal court in the Eastern District of Tennessee, challenging his convictions and sentences for both murders. *Smith*, 2016 WL 5724321, at *2. The district court denied relief. *Id.* at *15. Citing to *Smith I*, the district court summarized trial testimony relevant to this appeal:

Chester Blythe, a special agent with the F.B.I. and a microscopic analyst, testified that hair taken from the campsite on Holston Mountain in Sullivan County matched Hartsock's hair sample but did not match the [Petitioner's] sample.

*Id.* at *8.

In 2017, the Petitioner filed a motion to reopen his post-conviction petition, or alternatively a petition for a writ of error coram nobis, alleging the discovery of new evidence, which he claimed established his "actual innocence." He offered a letter and corresponding report from the U.S. Department of Justice concluding that FBI Special Agent Blythe's expert testimony about hair analysis made "scientifically unfounded assertions" that misled the jury.

2

The trial court held a hearing on the petition for a writ of error coram nobis, during which the following evidence was presented: H. Greeley Wells, Jr., a former assistant district attorney general who prosecuted the Petitioner, testified about the procedural history of the Petitioner's case. Mr. Wells recalled the trial testimony of FBI Special Agent Blythe; the special agent testified at the Petitioner's trial that he compared the campsite hair samples to samples from the Petitioner and his co-defendant, David Hartsock. The campsite hairs had been found on Holston Mountain, in the area of the crimes, within a few days of the murders. Mr. Wells testified that Special Agent Blythe testified at trial that none of the hairs found at the campsite matched the Petitioner's DNA. Special Agent Blythe did testify that there was a possible match of the hairs, but not a positive match, with co-defendant Hartsock.

Mr. Wells recalled that the hair samples were relevant at trial because the Petitioner and his co-defendants had admitted to camping on Holston Mountain following the murders and admitted to cutting their hair to disguise their identities. Mr. Wells testified that the letter from the FBI and its corresponding report did not contain new evidence with regards to the Petitioner and the hair analysis testimony. Mr. Wells stated that the Petitioner's convictions were based on the Petitioner's statements and corroborating evidence and that the hair analysis testimony had no bearing on the outcome of his trial.

At the conclusion of the hearing, the trial court issued an order, stating:

> [I]t appears to the undersigned that [Special Agent Blythe's] hair analysis testimony was completely inconsequential. First, none of the hairs recovered were identified as belonging to [the Petitioner.] Second, [the Petitioner] admits that he and his co-defendant [Hartsock] cut their hair after the murders. [Co-defendant Hartsock] also told police that they had cut their hair after the murders. The fact that they both cut their hair after the murders was corroborated by their appearance when they were arrested two days later as well as by the location of hair taken from the campsite.
>
> More importantly, there really was no question about [the Petitioner] and [co-defendant] Hartsock being together before, during, and after the crimes. [The Petitioner] was "tied to" [co-defendant] Hartsock at a remote cabin when they were arrested. The fact that some of the hair recovered from their campsite was identified as being consistent with the hair of [co-defendant] Hartsock did not make it more or less likely that [the Petitioner] was involved in the Pierce murder as a conspirator and accomplice, encouraging, planning, and participating in an armed robbery in which a

3

store keeper was killed. [The Petitioner] owned and drove the getaway car from the crime scene and attempted to cover up the crime by disposing of the gun, burning the getaway car, and cutting his hair. [Special Agent Blythe's] hair analysis might have exceeded the scope of science, but it had nothing to do with [the Petitioner's] guilt in this case and the Court finds that this newly discovered scientific evidence does not establish that [the Petitioner] is actually innocent of the Pierce murder. Accordingly, the motion to re-open [the Petitioner's] post-conviction petition will be denied.

. . . .

While there is no question that the newly obtained scientific evidence was not previously available to the [Petitioner], through no fault of his own, a successful petition for a writ of error coram nobis also requires the reviewing court to determine that such evidence may have resulted in a different judgment, had it been presented at trial. Here, the newly discovered evidence is that the FBI examiner alleged to have testified with more certainty than the science would support as to the identification of the hair belonging to [the Petitioner's] co-defendant. As noted above, the hair analysis testimony was essentially inconsequential and had no effect on [the Petitioner's] conviction for the Pierce murder. Whether the FBI hair examiner['s] testimony was toned down at trial by the introduction of the newly discovered evidence that it exceeded the science, or was completely excluded from the trial, the result would be the same: [the Petitioner] would be convicted of felony murder for his role in the offense during which Mr. Pierce was killed.

Accordingly, this Court finds that the new evidence would not have resulted in a different judgment if presented at trial and therefore the petition for a writ of error coram nobis will be denied.

It is from this judgment that the Petitioner appeals.

### III. Analysis

On appeal, the Petitioner argues that the trial court erred when it denied his motion to re-open post-conviction proceedings based on the letter from the FBI because, in light of the "extremely limited proof" offered by the State to tie the Petitioner to the murder of victim Pierce, "any deficiency in that proof is material." The Petitioner further alleges that the trial court erred when it dismissed his petition for a writ of error coram nobis because, had the hair analysis expert testimony been excluded, reasonable doubt would

exist, and the jury would have acquitted the Petitioner of the felony murder charge. The State responds that this court lacks jurisdiction to consider the Petitioner's motion to reopen post-conviction proceedings because the Petitioner failed to comply with the procedures for seeking review of a motion to re-open a petition for post-conviction relief. The State further responds that the Petitioner did not present newly discovered evidence that was likely to change the outcome of his trial and thus, the trial court properly dismissed his petition for a writ of error coram nobis.

### A. Motion to Reopen Post-Conviction Proceeding

The grounds for reopening a petition for post-conviction relief are narrow:

(a) A petitioner may file a motion in the trial court to reopen the first post-conviction petition only if, as relevant here, the following applies:

> (2) The claim in the motion is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; [and]

> (4) It appears that the facts underlying the claim, if true, would establish by clear and convincing evidence that the petitioner is entitled to have the conviction set aside or the sentence reduced.

(b) The motion must set out the factual basis underlying its claims and must be supported by affidavit. The factual information set out in the affidavit shall be limited to information which, if offered at an evidentiary hearing, would be admissible through the testimony of the affiant under the rules of evidence. The motion shall be denied unless the factual allegations, if true, meet the requirements of subsection (a). If the court grants the motion, the procedure, relief and appellate provisions of this part shall apply.

T.C.A. § 40-30-117(a)-(b) (2019).

A post-conviction court's denial of a motion to reopen a post-conviction petition does not afford a petitioner an appeal as of right, *see* Tennessee Rule of Appellate Procedure 3(b), rather, such denial may be challenged on appeal only by the filing of an application for permission to appeal no later than 30 days after the denial by the post-conviction court. T.C.A. § 40-30-117(c); Tenn. Sup. Ct. R. 28, § 10(B). There are four requirements for an appeal from a motion to reopen to be considered: (1) the timeliness

5

of filing, (2) the place of filing, (3) the application to be filed, and (4) the attachments to the application. *Graham v. State*, 90 S.W.3d 687, 689 (Tenn. 2002). "In general, the contents of an application for permission to appeal must include the date and judgment from which the petitioner seeks review, the issue which the petitioner seeks to raise, and the reasons why the appellate court should grant review." *Id.* at 691. Whether a notice of appeal satisfies the requirements of an application for permission to appeal is a matter of substance over form. *Id.* The four statutory requirements are mandatory. *Timothy Roberson v. State*, No. W2007-00230-CCA-R3-PC, 2007 WL 3286681, at *9-10 (Tenn. Crim. App., Jackson, Nov. 7, 2007), *perm. app. denied* (Tenn. Apr. 14, 2008).

In the present case, the Petitioner has failed to comply with the statutory requirements for seeking appellate review. Specifically, the Petitioner failed to include in his notice of appeal the specific issues he was seeking to raise on appeal. Moreover, the Petitioner has not, at any point in this post-conviction proceeding, presented new scientific evidence establishing that he is actually innocent of the aggravated robbery which led to victim Pierce's death. As established at the post-conviction hearing, and as we address in further detail below, the special agent's testimony at trial and the "new scientific evidence" contained in the FBI's letter were inconsequential as to the Petitioner's guilt, based on his admitted role in the crime. The trial court did not err when it denied the Petitioner's motion to reopen the petition because the Petitioner failed to introduce evidence that established his actual innocence. The Petitioner is not entitled to relief.

## B. Petition for Writ of Error Coram Nobis

It is well-established that the writ of error coram nobis "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). The decision to grant or to deny a petition for the writ of error coram nobis on its merits rests within the sound discretion of the trial court. *Ricky Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). We, therefore, review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). Tennessee Code Annotated section 40-26-105(b) provides, in pertinent part:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which are litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at trial.

6

A petition for a writ of error coram nobis "'may be dismissed without a hearing, and without the appointment of counsel for a hearing'" if the petition does not allege facts showing that the petitioner is entitled to relief. *Bernardo Lane v. State*, No. W2008-02504-CCA-R3-CO, 2009 WL 4789887, at \*5 (Tenn. Crim. App., at Jackson, Dec. 11, 2009), *perm. app. denied* (Tenn. June 17, 2010) (citations omitted). "As a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record . . . will not justify the granting of a petition for the writ of error coram nobis when the evidence, if introduced," might not have resulted in a different outcome. *State v. Hart*, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995) (citations omitted); *see also Vasques*, 221 S.W.3d at 525-28 (noting that proper standard of review is whether the proffered evidence "might have" resulted in a different outcome rather than whether it "would have" resulted in a different one).

In the present case, the Petitioner contends that the FBI letter was newly discovered evidence that would have changed the outcome of the trial. He contends that had Special Agent Blythe's hair analysis testimony been excluded, he would have been acquitted of the felony murder charge. The letter from the FBI addressed the science surrounding hair analysis generally and did not address the Petitioner's case specifically. Moreover, the hair analysis testimony did not establish an affirmative match with the Petitioner's DNA; the agent merely stated that there was a potential match between the hair sample and the Petitioner's co-defendant. This, as the trial court stated, amounted to inconsequential evidence in light of the proof presented by the State of the Petitioner's involvement in victim Pierce's murder. The letters from the FBI addressed the general possibility that the agent's testimony might have overstated the science surrounding hair analysis; excluding that testimony would not have changed the outcome of the Petitioner's trial on this charge. After review, we conclude that the trial court did not abuse its discretion when it held that the Petitioner was not entitled to coram nobis relief.

## IV. Conclusion

Based upon the foregoing reasoning and authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

7