IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 9, 2015

**TERESA DEION SMITH HARRIS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Henry County**
**No. 12080        C. Creed McGinley, Judge**

---

**No. W2015-01072-CCA-R3-ECN  -  Filed March 31, 2016**

---

In 1994, a Henry County jury convicted the Petitioner, Teresa Deion Smith Harris, of first degree felony murder, and she was sentenced to life in prison without the possibility of parole. The Petitioner appealed, and this Court affirmed the Petitioner's conviction and sentence. *State v. Teresa Deion Smith Harris*, No W2012-00540-CCA-R3-CD, 1996 WL 654335, at *1 (Tenn. Crim. App., at Jackson, Nov. 12, 1996), *perm. app. granted* (Tenn. June 8, 1998). The Tennessee Supreme Court affirmed the Petitioner's conviction and sentence but found that there existed some harmless error in sentencing. *State v. Harris*, 989 S.W.2d 301, 316 (Tenn. 1999). The Petitioner filed a petition for post-conviction relief and two previous petitions for writ of error coram nobis. All of these petitions were denied, the Petitioner appealed, and this Court affirmed their denial. In this, her third, petition for writ of error coram nobis, the Petitioner alleged that she had received newly discovered evidence in the form of an affidavit from a doctor who said that her attorney was cavalier about the charges the Petitioner faced and seemed to not want to talk to the doctor about the Petitioner's case. The coram nobis court summarily dismissed the petition, finding it was filed outside the statute of limitations and that the evidence presented by the Petitioner was not newly discovered and was available to her before her 1994 trial. On appeal, the Petitioner, proceeding pro se, contends that the coram nobis court erred when it dismissed her petition without conducting an evidentiary hearing. After a thorough review, we affirm the coram nobis court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J. delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and ALAN E. GLENN, J. joined.

Teresa Deion Smith Harris, Nashville, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Matthew Stowe, District Attorney General; and Beth Hall, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

In the appeal from the denial of a previous petition for error coram nobis, this court provided a brief synopsis of the facts developed at trial:

> The Petitioner was convicted of first degree felony murder and sentenced to life without the possibility of parole for her role in the death of nineteen-year-old Dennis Brooks, Jr. The Petitioner and her co-defendants, Walter Smothers and Stacy Ramsey, decided to stop and steal a vehicle after their vehicle broke down. The Petitioner flagged down a vehicle driven by the victim, and the trio overcame the victim. The victim was kidnapped, beaten, shot, stabbed, murdered, and mutilated. The Petitioner admitted to pressing the victim's excised heart against her lips and stabbing the victim once but otherwise denied participating in the mutilation.

*Teresa Deion Smith Harris v. State,* No. W2012-00540-CCA-R3-CO, 2012 WL 3457797, at *1 (Tenn. Crim. App., at Jackson, Aug. 15, 2012), *no perm. app. filed* (citing *State v. Harris,* 989 S.W.2d 307, 309-11 (Tenn. 1999)). This Court affirmed the Petitioner's conviction and sentence. *State v. Teresa Deion Smith Harris,* No. 02C01-9412-CC-00265, 1996 WL 654335 (Tenn. Crim. App., at Jackson, Nov. 12, 1996), *perm. app. granted* (Tenn. June 8, 1998). Our supreme court affirmed after finding harmless error in application of one of two aggravating circumstances. *Harris,* 989 S.W.2d at 316.

The Petitioner subsequently filed a petition for post-conviction relief asserting newly discovered evidence and ineffective assistance of counsel, which was denied by the post-conviction court. *Teresa Deion Smith Harris v. State,* No. W2000-02611-CCA-R3-PC, 2001 WL 892848 (Tenn. Crim. App., at Jackson, Dec. 17, 2001), *no perm. app. filed.* As newly discovered evidence, she offered an undated letter written to her from her accomplice, Walter Steve Smothers, in which he recanted the portion of his trial testimony that implicated the Petitioner. *Id.* at *1. During the post-conviction hearing, however, Mr. Smothers recanted the statements he made in the letter. *Id.* He explained that the letter "served its purpose . . . to get a ride. I ain't ever getting out of prison. I figured if somebody knew this, I might get a chance to come to court, see the countryside." *Id.* The post-conviction court denied her petition, and this Court affirmed. *Id.* About her assertion that her trial counsel were ineffective, the Petitioner claimed she received ineffective assistance of trial counsel due to counsels' failure to object to an

2

incomplete aggravating circumstance reported by the jury. *Id.* At the post-conviction hearing, the Petitioner's trial counsel testified that they did not object to this instruction because the jury rejected the State's request for the sentence of death and sentenced the Petitioner to life in prison. *Id.* Had counsel objected, the trial court would have instructed the jury again, using the proper aggravating circumstance instruction, and the jury would have reconsidered the Petitioner's sentence with the proper instruction. *Id.* Counsel expressed fear that, if the jury again considered the Petitioner's sentence, it might determine she should be sentenced to death. *Id.* The post-conviction court found that this was a tactical decision not entitling the Petitioner to post-conviction relief, and this Court affirmed. *Id.* at *3.

In August 2011, the Petitioner filed her first petition for writ of error coram nobis, which was summarily dismissed by the coram nobis court. This Court summarized the Petitioner's claims, stating:

> The Petitioner asserts that she is entitled to a writ of error coram nobis based upon a documentary entitled "Women Behind Bars," which was broadcast on or about May 4, 2010. According to the Petitioner, the documentary includes an interview of Walter Smothers, the Petitioner's co-defendant, during which he admitted that he had also planned to kill the Petitioner on the night of the victim's murder in order to cover up his actions and leave no witnesses.
>
> Although the documentary aired on May 4, 2010, the Petitioner did not file her petition until August 3, 2011, more than one year later. The Petitioner claims that she attempted to file the petition on May 7, 2010, but mailed it to the incorrect address based upon the instructions of the law library clerk at the prison. The Petitioner, however, included no such allegation in her petition for writ of error coram nobis filed in the trial court nor does she explain how any failure to mail the petition to the correct address in May 2010 delayed the filing of the petition until August 2011, almost fifteen months later. The Petitioner also asserts that the statute of limitations should not begin to run until December 19, 2011, when she actually viewed the documentary. The Petitioner, however, was admittedly aware in May 2010 of the documentary and the information provided by her co-defendant in the interview. The Petitioner has failed to establish that application of the statute of limitations to bar her claim prevents her from having her claim heard in a meaningful time or in a meaningful manner. We conclude that the principles of due process do not require the tolling of the statute of limitations.

*Id.* at *2-3.

In February 2014, the Petitioner filed her second petition for writ of error coram nobis relief. *Teresa Deion Smith Harris v. State*, W2014-01020-CCA-R3-ECN, 2015 WL 226091 (Tenn. Crim. App., at Jackson, Jan. 16, 2015)*, perm. app. denied* (Tenn. May 15, 2015). In her petition, she alleged newly discovered evidence relating to the timing of the gunshot wounds to the victim, which, she asserted, would negate a finding that the murder was torturous or heinous, atrocious, or cruel. *Id.* at *1. The coram nobis court summarily dismissed her petition, and the Petitioner appealed, contending that the coram nobis court erred in failing to conduct an evidentiary hearing, by declining to review the coroner's report from trial, and that the coram nobis court exhibited bias as demonstrated in the language of the order of dismissal. *Id.* at *2. On appeal, we affirmed the coram nobis court's dismissal, "Because [the P]etitioner failed to establish that the proffered evidence would have resulted in a different outcome at trial and because she has not established bias on behalf of the coram nobis court . . . ." *Id*. at *3. The Tennessee Supreme Court denied the Petitioner's request to appeal on May 15, 2015.

On March 30, 2015, before the Tennessee Supreme Court had denied her appeal in her second writ of error coram nobis, the Petitioner filed this, her third, petition for writ of error coram nobis. In it, she claimed as newly discovered evidence an affidavit sworn to by Dr. Philip Hull Morson on March 26, 2014, that contended that there existed at the time of trial clear mitigating circumstances that the Petitioner's trial attorneys chose to ignore. The Petitioner asserted that the jury sentenced her to life without the possibility of parole because the crime was heinous. She said that the affidavit from Dr. Morson "clearly shows that there were inconsistencies within the defense team and no one wanted the truth about the abuse [the Petitioner] suffered to come out." The Petitioner further contended that she only recently received the signed and notarized affidavit, and she asked the coram nobis court to grant her relief.

The Petitioner attached the following affidavit of Dr. Morson to her petition for writ of error coram nobis:

AFFIDAVIT OF DR. PHILIP HULL MORSON

Personally appeared before me, the undersigned, a Notary Public in and for said County and State, Dr. Philip Hull Morson, who having been duly sworn according to law does make oath as follows:

1. I am over the age of 18 and am of sound mind.
2. I reside in Hardeman County, Tennessee.

3. In 1994 I was the Staff Physician at Western Mental Health Institute in Bolivar.

4. In 1994 I did treat Teresa Deion Harris, and subsequently testified at her sentencing trial.

Teresa Deion Harris was admitted to the Western Mental Health Institute in Bolivar, TN for the first time on January 15, 1994. I had several phone calls regarding Ms. Harris with her attorney Shipp Weems during her stays at Bolivar. I do not remember talking with her Attorney Steve West.

I was subpoenaed two or three times to Court during the preliminary hearings to assist Ms. Harris to testify or participate. I observed her attorneys on these occasions. I subsequently was subpoenaed to Paris TN just prior to her trial to assist in readying her for trial. I did then testify at her sentencing hearing. On all these occasions I did interact with her defense attorneys Steve West and Shipp Weems.

From my meetings with Ms. Harris, Mr. Weems, and Mr. West I make the following observations:

> Steve West would seldom meet my eyes when we spoke. In fact, he would not really talk to me. He seemed to not want me present and to want his client convicted. He was cavalier about the whole thing and seemed not to want to be there at all.

> Shipp Weems would do all the talking. He seemed to genuinely care for Ms. Harris and wanted to get her a lesser sentence.

> Judge Julian Guinn was very intimidating in court. Shipp Weems appeared to be intimidated by him and would physically shake during his interactions with Guinn.

In my mind there is no doubt the judge was against Ms. Harris and it was a foregone conclusion she was guilty. The judge preferred the prosecutor over her defense.

Judge Guinn constantly tried to impeach my credentials and discredit me as an expert witness both in preliminary hearings and during trial.

5

In my discussion with Mr. Weems and Mr. West there was never any discussion suggesting Ms. Harris was innocent.

I think mitigating circumstances were clearly there for Ms. Harris but in my discussion of this Mr. Weems said we cannot do that and Mr. West would just look off. They said they would not implicate her brother-in-law who had raped her and implied it was Ms. Harris['s] decision not to pursue this. The suggestion was made that Ms. Harris'[s] sister, Denise Taylor, would not testify if her husband[']s rapes were brought up and if so would deny them ever happening.

After the trial, Mr. Weems claimed 50% of those sentenced to life w/o parole get out of prison in about fifteen years. He sought to downplay the severity of the sentence.

On May 4, 2015, the coram nobis court summarily dismissed the Petitioner's petition. It found:

The court has carefully examined the file including the affidavit of Dr. Phillip [Hull] Morson that was executed on March 26, 2014 and find that there is nothing in the record that would establish that the Petitioner is entitled to any relief. On the face of Dr. Morson's affidavit it clearly demonstrates that the information that she attempts to rely on was available in 1994 prior to her actual trial. There is nothing to suggest that this information would qualify as newly discovered evidence such as would entitle the Petitioner to any relief. The statute of limitations of T.C.A.§ 27-7-103 would clearly bar the relief sought by the Petitioner.

It is from that judgment that she now appeals.

## II. Analysis

On appeal, the Petitioner contends that the coram nobis court erred when it summarily dismissed her petition because Dr. Morson's affidavit proves that the Petitioner's telling the victim to "stop groveling" and pleading for his life during the killing was made because she was a battered woman, bullied by Mr. Smothers, and addicted to drugs. She asserts that the doctor's affidavit is exculpatory and that she is entitled to an evidentiary hearing. The Petitioner then revives the same assertions that she presented in her previous petitions for writ of error coram nobis. The State counters that the coram nobis court did not err when it summarily dismissed her petition because the affidavit does not constitute newly discovered evidence, the Petitioner had a

meaningful opportunity to litigate the same issue in previous collateral attacks, and she did not diligently pursue her claim in a timely manner.

A writ of error coram nobis is available to a defendant in a criminal prosecution. T.C.A. § 40-26-105(a) (2014). The decision to grant or to deny a petition for the writ of error coram nobis on its merits rests within the sound discretion of the trial court. *State v. Ricky Harris*, 301 S.W.3d 141, 144 (Tenn. 2010) (citing *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007)). Tennessee Code Annotated section 40-26-105(b) provides, in pertinent part:

> Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999); *State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002). As previously noted by this Court, "the purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" *State v. Hart*, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting *State ex rel. Carlson v. State*, 407 S.W.2d 165, 167 (Tenn. 1996)).

To establish that he is entitled to a writ of error coram nobis, the Petitioner must show: (a) the grounds and the nature of the newly discovered evidence; (b) why the admissibility of the newly discovered evidence may have resulted in a different judgment if the evidence had been admitted at the previous trial; (c) that the Petitioner was without fault in failing to present the newly discovered evidence at the appropriate time; and (d) the relief sought. *Hart*, 911 S.W.2d at 374-75. Affidavits should be filed in support of the petition. *Id.* at 375.

> The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories, as are the grounds for reopening a post-conviction petition. Coram nobis claims may be based upon any "newly discovered evidence relating to matters litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. Coram nobis claims therefore are singularly fact-intensive. Unlike motions to reopen, coram nobis claims

7

are not easily resolved on the face of the petition and often require a hearing.

*Harris v. State*, 102 S.W.3d 587, 592-93 (Tenn. 2003). "Similar to habeas corpus hearings, coram nobis evidentiary hearings are not mandated by statute in every case." *Richard Hale Austin v. State*, No. W2005-02591-CCA-R3-CO, 2006 WL 3626332, *6 (Tenn. Crim. App. Dec. 13, 2006), *no Tenn. R. App. P. 11 filed*. A petition of either type "'may be dismissed without a hearing, and without the appointment of counsel for a hearing'" if the petition does not allege facts showing that the petitioner is entitled to relief. *Id.* (quoting *State ex rel. Edmondson v. Henderson*, 421 S.W.2d 635, 636 (Tenn. 1967)).

A petition for a writ of error coram nobis must be filed within one year of the judgment becoming final in the trial court. T.C.A. § 27-7-103. This statute of limitations "is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed post-trial motion." *Harris v. State,* 301 S.W.3d 141, 144 (Tenn. 2010); *see Mixon,* 983 S.W.2d at 670 ("[W]e reject the contention . . . that the statute does not begin to run until the conclusion of the appeal as of right proceedings."). In the present case, the judgment became final in 1998. The Petitioner did not file this petition for writ of error coram nobis until July 2014, more than fifteen years later.

The one-year statute of limitations for a petition for writ of error coram nobis may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. *Harris,* 301 S.W.3d at 145. In determining whether the statute should be tolled, the court must balance the petitioner's interest in having a hearing with the State's interest in preventing a claim that is stale and groundless. *Id.* Generally, "before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State,* 845 S.W.2d 204, 208 (Tenn. 1992). The *Burford* rule requires three steps:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State,* 903 S.W.2d 299, 301 (Tenn. 1995). As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration.

8

*Seals v. State,* 23 S.W.3d 272 (Tenn. 2000). Discovery of or ignorance to the existence of a claim does not create a "later-arising" claim. *See Brown v. State,* 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State,* 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994).

In this case, the Petitioner filed her petition for writ of error coram nobis well outside the statute of limitations. We must decide, therefore, whether due process considerations require the tolling of the statute of limitations. The Petitioner alleges that the newly discovered evidence is the affidavit of Dr. Morson. The State offers that Dr. Morson met with the Petitioner in her preparation for trial and that he testified at her sentencing hearing. It asserts that she knew about Dr. Morson and that the events he observed are not newly discovered. We agree. This matter is one that could have been litigated, and it does not fall within the narrow purview of the statutes codifying a writ of error coram nobis. As previously stated, discovery of or ignorance to the existence of a claim does not create a "later-arising" claim. *See Brown,* 928 S.W.2d at 456. The Petitioner is not entitled to coram nobis relief. Accordingly, the trial court did not err when it summarily dismissed the petition.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the coram nobis court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

9