
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs at Knoxville January 18, 2017

**TOMMY NUNLEY v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 96-10669     John Campbell, Judge**

_____

**No. W2016-01487-CCA-R3-ECN**

_____

The petitioner, Tommy Nunley, appeals the summary denial of his petition for writ of error coram nobis, which petition challenged his 1998 Shelby County Criminal Court jury conviction of aggravated rape, claiming that the trial court erred by treating his petition for writ of error coram nobis as a petition for DNA testing and by summarily dismissing the petition. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Tommy Nunley, Whiteville, Tennessee, pro se.

Herbert H. Slatery III, Attorney General and Reporter; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Kirby May, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

A Shelby County Criminal Court jury convicted the petitioner of one count of the aggravated rape of the victim, his 13-year-old cousin. *See State v. Tommy Nunley*, No. 02C01-9804-CR-00114, slip op. at 1-3 (Tenn. Crim. App., Jackson, Mar. 12, 1999) (summarizing the evidence adduced at the petitioner's trial) (*Nunley I*). This court affirmed the conviction and accompanying 25-year sentence on direct appeal. *See id.*

The petitioner later filed a timely petition for post-conviction relief, alleging, among other things, that his "trial counsel was ineffective for failing to move for state-funded expert assistance for DNA testing of various items collected during the investigation of the case." *Tommy Nunley v. State*, No. W2003-02940-CCA-R3-PC, slip

op. at 2 (Tenn. Crim. App., Jackson, Jan. 6, 2006) (*Nunley II*). At the conclusion of the evidentiary hearing on the petition for post-conviction relief, "the post-conviction court sua sponte entered an order directing that the TBI conduct DNA testing on biological samples obtained from the [p]etitioner and biological samples contained in the rape kit." *Id.*, slip op. at 4. Nearly two years later, "the State reported that the rape kit at issue in this case had been in the possession of the [Memphis Sexual Assault Resource Center] where it was either lost or destroyed" during "'a flood at U.T. Bowld.'" *Id.*, slip op. at 5. The post-conviction court granted post-conviction relief on grounds that the challenged "evidence could and should have been tested at the time of the [p]etitioner's trial, and that because said evidence has been lost and/or destroyed, petitioner's constitutional right to a fair trial was violated." *Id.*

On appeal, this court reversed the grant of post-conviction relief, concluding that the post-conviction court erred by ordering DNA testing on the challenged evidence in the absence of a request from the petitioner and by granting post-conviction relief after learning that the evidence was not available for testing. *See id.*, slip op. at 5-7. We determined that "the lost evidence may not be imputed to trial counsel's" failure to seek pretrial DNA testing and that the petitioner had failed to establish that, had counsel sought pretrial DNA testing, the results of his trial would have been different. *See id.*, slip op. at 7.

In 2014, the pro se petitioner filed a petition for relief under the Post-Conviction DNA Analysis Act of 2001, asking "that DNA analysis be performed on all available evidence within the State's possession." *Tommy Nunley v. State*, No. W2014-01776-CCA-R3-PC, slip op. at 2 (Tenn. Crim. App., Jackson, Apr. 13, 2015), *perm. app. denied* (Tenn. Sept. 21, 2015) (*Nunley III*). The post-conviction court appointed counsel, and, after the State filed a response, the court denied relief, concluding that the petitioner "was not entitled to relief because the evidence at issue is not 'still in existence and in such a condition that DNA analysis may be conducted,' as required by Section 40-30-304(2)." *Id.* On appeal, this court affirmed the denial because the record established that "the Rape Kit is no longer available for testing." *Id.*, slip op. at 4.

On May 31, 2016, the pro se petitioner filed a petition for writ of error coram nobis, claiming entitlement to relief on grounds that the State had violated his constitutional rights by withholding exculpatory evidence. He argued that reports in the possession of the State prior to his trial established that forensic testing conducted by Cellular and Molecular Forensics Laboratory prior to trial exonerated him. In support of his claims, the petitioner appended to his petition a copy of reports generated by Cellular and Molecular Forensics Laboratory that indicated that testing on the rape kit, the bedsheets, and the victim's slacks was negative for the presence of "sperm components"; letters from the assistant district attorney general requesting DNA or serology testing by

the Tennessee Bureau of Investigation ("TBI"); a report from the TBI indicating that no testing would be performed on the victim's clothing "per laboratory policy"; and a memo addressed to the petitioner's file from David Shapiro, an assistant district attorney general, that included a photocopy of a hand-written telephone message addressed to Mr. Shapiro and Johnny McFarland, another assistant district attorney general, along with a type-written statement that "[t]he local lab . . . determined that there was no match between the defendant and the victim."

The trial court entered an order denying relief on June 9, 2016. The trial court found that the claims alleged in the petition for writ of error coram nobis had been raised and litigated and that the petitioner had failed to establish the existence of newly discovered evidence that would have changed the outcome of his trial.

In this timely appeal, the petitioner contends that the trial court erred by sua sponte treating his petition for writ of error coram nobis as a petition for DNA testing and that the court erred by denying coram nobis relief. The State contends that the trial court treated the petition properly and that summary dismissal of the petition was appropriate.

Clearly, the trial court did not treat the petition for writ of error coram nobis as a petition for DNA testing. Although the court's order is styled "Order Denying Petitioner's Petition for DNA Testing Pursuant to T.C.A. § 40-30-301 Et Seq.," the order disposes only of the petitioner's bid for coram nobis relief and does not consider the petition as a request for DNA testing. The title of the order is nothing more than a clerical error. We turn, then, to the trial court's denial of coram nobis relief.

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). Coram nobis relief is provided for in criminal cases by statute:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may

-3-

> have resulted in a different judgment, had it been presented at
> the trial.

T.C.A. § 40-26-105(b) (2006); *see State v. Vasques*, 221 S.W.3d 514, 525-28 (Tenn. 2007) (describing standard of review as "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different'" (citation omitted)). The grounds for seeking a petition for writ of error coram nobis are not limited to specific categories but may be based upon any "newly discovered evidence relating to matters which were litigated at the trial" so long as the petitioner also establishes that the petitioner was "without fault" in failing to present the evidence at the proper time. T.C.A. § 40-36-105(b).

"The writ of error [coram nobis] may be had within one (1) year after the judgment becomes final by petition presented to the judge at chambers or in open court . . . ." T.C.A. § 27-7-103; *Mixon*, 983 S.W.2d at 670. In coram nobis cases, however, the statute of limitations is an affirmative defense that should be raised by the State in the trial court. *See Harris v. State*, 102 S.W.3d 587, 593 (Tenn. 2003) (citing *Sands v. State*, 903 S.W.2d 297, 299 (Tenn. 1995)).

Although the decision to grant or deny coram nobis relief rests within the sound discretion of the trial court, *see Vasques*, 221 S.W.3d at 527-28, "[w]hether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness," *Harris v. State*, 301 S.W.3d 141, 145 (Tenn. 2010).

As an initial matter, we observe that although the trial court concluded that the defendant's petition for writ of error coram nobis was time barred, the State did not plead the statute of limitations as an affirmative defense in the trial court. Consequently, we will consider the petition on its merits. *Harris*, 102 S.W.3d at 593.

As he did in the trial court, the petitioner claims entitlement to coram nobis relief on grounds that the State withheld exculpatory evidence in violation of his constitutional right to due process of law, referencing the documents appended to his petition for writ of error coram nobis in support of his claim. He maintains that he only became aware of each of the purportedly exculpatory documents when they were appended to the State's response to his 2014 petition for post-conviction DNA testing. This court's opinion reversing the grant of post-conviction relief, however, indicates that the petitioner's trial counsel was aware of the report of testing conducted by Cellular and Molecular Forensics Laboratory prior to the petitioner's trial. *Nunley II*, slip op. at 3-4. Indeed, trial counsel testified at the post-conviction hearing that he had "discussed the test results from various items which had already been tested with Paulette Sutton,

-4-

Assistant Director of Forensic Services at the University of Tennessee, Regional Forensic Center" prior to the petitioner's trial. *Id.*, slip op. at 3. Trial counsel asked Ms. Sutton to perform an independent review of the testing conducted by Cellular and Molecular Forensics Laboratory, and, following that review, Ms. Sutton provided the following conclusions to trial counsel:

> "The only item of physical evidence from [the victim] which gave a positive test for acid phosphatase was the gray knit slacks (FSL # 5805). Further testing of these slacks did not show the presence of spermatozoa and was negative with the p30 antigen. In light of these cumulative laboratory results, I do not believe that testing for soluble blood group substance(s) would be likely to be of any benefit with this particular item of evidence, and would not recommend that blood group substance(s) testing be pursued.
>
> The items collected in the sexual assault kit from [the victim] appear to have been tested only for the presence of spermatozoa. No tests which would indicate the presence of seminal fluid, as opposed to spermatozoa, appear to have been conducted. Without test results for both seminal fluid and spermatozoa, I am unable to make a recommendation regarding testing for blood group substance(s) from the components of the sexual assault kit."

*Id.*, slip op. at 3-4.

Because the petitioner's trial counsel possessed this information prior to the petitioner's trial, the reports generated by Cellular and Molecular Forensics Laboratory cannot qualify as newly discovered evidence.

Similarly, with regard to the TBI report, the petitioner testified at the hearing on his petition for post-conviction relief that his original attorney "informed him that the TBI could not do a comparison because the sample was too small." *Nunley II*, slip op. at 4. Although this testimony does not indicate that the petitioner was aware that the TBI had declined to do any testing "per laboratory policy," it does establish that the petitioner was aware prior to his trial that the TBI would not perform any testing. Consequently, the TBI report cannot qualify as newly discovered evidence.

That leaves the two letters from the assistant district attorney to the TBI requesting testing and the memo to the petitioner's file from Mr. Shapiro. Even if they

qualified as newly discovered evidence, the letters from the assistant district attorney general requesting forensic testing would not entitle the petitioner to coram nobis relief because no "'reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" *Vasques*, 221 S.W.3d at 525-28. Neither letter contains any information that touches upon the petitioner's guilt or innocence.

Finally, the memo to the petitioner's file does not, as the petitioner alleges, exonerate him. The type-written portion of the memo states:

> I spoke to Steve Weichman at the TBI lab. His lab's policy is not to re-do tests already done by another certified lab. The local lab (Becky Joyner's outfit) determined that there was no match between the defendant and the victim . . . .[1] He will not re-do any tests.

The photocopied telephone message indicates that Steve Weichman from the TBI laboratory telephoned Messrs. Shapiro and McFarland on September 2, 1997, and left the following message: "TBI no longer does blood grouping. Due to Becky Joyner results, he cannot do DNA. He will not re-do Becky Joyner's test. Call him." The record establishes that "Becky Joyner's outfit" is, in fact, Cellular and Molecular Forensics Laboratory.[2] As indicated above, the results of testing conducted by Cellular and Molecular Forensics Laboratory, which were appended to the petition for writ of error coram nobis, were available to the petitioner prior to his trial. Trial counsel not only reviewed this information but consulted with Ms. Sutton, an independent expert, to analyze the results and discuss the potential for further forensic testing. Additionally, both the petitioner and his counsel were aware prior to trial that the TBI would not conduct any further testing of the materials in this case. Moreover, regardless of what the memo suggests, testing performed by Cellular and Molecular Forensics Laboratory did not, in fact, "determine[] that there was no match between the defendant and the victim." Instead, the testing established that, of the items tested, only the victim's slacks were positive for any of the components of semen, and the slacks were negative for the presence of spermatozoa. These results are no different than those available to the petitioner prior to his trial. Thus, examined within the context of the record as a whole, the information contained in the memo does not qualify as newly discovered evidence.

Because the petitioner failed to present newly discovered evidence to establish a "'reasonable basis . . . for concluding that had the evidence been presented at

---

[1] We have omitted the victim's surname in order to conform with this court's policy.

[2] Ms. Joyner's signature appears on the bottom of each of the documents from Cellular and Molecular Forensics Laboratory.

trial, the result of the proceedings might have been different,'" *Vasques*, 221 S.W.3d at 525-28, we affirm the judgment of the trial court denying the petition for writ of error coram nobis.

_____
JAMES CURWOOD WITT, JR., JUDGE